66 455
70 391

MATTHEW WOODLAND, DEFENDANT IN ERROR, v. NORTH JERSEY STREET RAILWAY COMPANY, PLAINTIFF IN ERROR.

Argued February 20, 1901—Decided June 10, 1901.

1. A trolley company can claim no superior right to that of the driver of any other vehicle in the use of the highway, regard being had, however, to the former's fixed line of travel. Each must have due regard to the rights of the other in its use.

2. The plaintiff, in a well-lighted street at night, when about to cross the highway in his carriage, a short distance from a regular crossing, saw a trolley car approaching two hundred and fifty feet away. He at once proceeded to cross with his horse on a walk, without further watching the approach of the car, which collided with his carriage, causing him personal injuries. Upon the trial of his action the court refused to nonsuit on the ground of contributory negligence. *Held*, on error, that the ruling was correct.

On error to the Essex Circuit.

Before DEPUE, CHIEF JUSTICE, and Justices DIXON, COLLINS and HENDRICKSON.

For the plaintiff in error, *George T. Werts.*

For the defendant in error, *Samuel Kalisch.*

The opinion of the court was delivered by

HENDRICKSON, J. A reversal of the judgment below is asked for because of the refusal of the trial judge to grant a nonsuit at the close of the plaintiff's case. The suit was for damages for personal injuries sustained by the collision of one of the defendant's trolley cars with plaintiff's carriage as he was crossing the highway, from left to right, near the town of Franklin, in Essex county, at about the hour of eleven o'clock on the night of September 14th, 1899. Plaintiff resided at Franklin, and had started in his buggy to drive to Paterson. He was going north on Franklin avenue, and, for convenience of travel, had left the right-hand side of the road and was traveling on the left-hand side. He had just passed beyond Brooks avenue when he undertook to cross the defendant's tracks, in order to reach again the right-hand side of the road and pursue his journey.

His testimony was that he had just turned to cross, and his horse was about stepping over the first rail, when he noticed, for the first time, a southbound car, fully lighted, about half a block distant, approaching him. He estimated the distance of the car from him to be two hundred and fifty feet. He was quite confident that the distance was over two hundred feet. He proceeded to drive his horse, on a walk, across the track, when the car struck the wagon just as the horse had passed the rails. The wagon was overturned and thrown a distance of twenty feet toward the curb, the horse falling underneath the wagon, and the plaintiff was found entangled in the spokes of a wheel that was suspended above the ground, in an unconscious condition. He was soon afterwards restored to consciousness and taken home. The three passengers on the car testified that the car was going at the time "very fast," "faster than usual." One of them estimated the speed of the car at the rate of fifteen miles an hour, and was confident it was more than the rate of ten miles an hour.

It was insisted below, and has been urged here, that the proofs show that the plaintiff was negligent, in continuing to cross after seeing the car, without making further observations of the car and without hurrying his horse. There was ground here, probably, upon which to argue negligence to the jury; but can it be said that plaintiff's negligence so clearly appears that the question should have been taken from the jury? Of course, the trolley company can claim no superior right to that of the driver of any other vehicle in the use of the highway, regard being had, however, to the former's fixed line of travel. Each must have due regard to the rights of the other in its use. The plaintiff must be considered as having acted with a knowledge of these mutual rights and liabilities. The rules that regulate the crossing of steam railroads have little application here. It is contended that the plaintiff did not look as he should have done before crossing. But the rule is, as to crossing a roadway, that one must use his powers of observation, in respect to other passers thereon, and a reasonable judgment, to avoid a collision. He is not required to extend his observation to an approaching car, however distant, but only to the distance within which vehicles, proceeding at customary and reasonably safe speed, would threaten his safety. *Newark Passenger Railway Co.* v. *Block,* 26 *Vroom* 605, 612.

The plaintiff looked and saw the car two hundred and fifty feet away as he was in the act of crossing. The evidence shows that there was an electric light hanging along the street, about fifty or sixty feet north of him toward the coming car, and it was light there. He had a right to assume that the car was furnished with appliances to reduce speed and to stop, and that it would not continue to run at a rate of speed incompatible with the safe use of the street by other vehicles. Nor was he bound to refrain from crossing, for fear that the motorman would not reduce the speed. *Consolidated Traction Co.* v. *Lambertson,* 30 *Vroom* 297. This principle was recognized by the Court of Errors, in *New Jersey Electric Railway Co.* v. *Miller,* 30 *Vroom* 423, where it was held that a driver may obtain a right of way over a street railway

where, in the reasonable exercise of his rights, he reaches the point of crossing in time to safely go upon the tracks in advance of the approaching car, the latter being sufficiently distant to be checked, and, if need be, stopped, before it should reach him. See, also, *Consolidated Traction Co.* v. *Haight,* 30 *Vroom* 577.

Since the plaintiff in this case was required to give at least some attention to his horse and the road over which he was driving, having regard to his safety in that direction, and in view of what he might lawfully assume as to the relative rights and duties between himself and the company, it seems quite clear that the question of his negligence on this occasion was rightly submitted to the jury.

After the defendant's evidence was in, a motion was made to direct a verdict for the defendant, which was also refused, and exception was taken to the refusal. The only difference in the situation, then, from what it was when the motion to nonsuit was made was that some of the important facts in evidence were disputed by the defendant's testimony; and, of course, these disputed facts were for the jury.

There were also exceptions to refusals to charge and to part of the charge as made, but a careful reading of the whole charge satisfies us that there is no error in this part of the record. The result is that the judgment should be affirmed.