MYRA ROSE SEARLES ET AL. v. ELIZABETH, PLAINFIELD AND CENTRAL JERSEY RAILWAY COMPANY.

Argued November 6, 1903—Decided February 23, 1904.

1. It is the duty of a motorman upon a street railway, when approaching an intersecting street, to have his car so far under control that he will not endanger the safety of other persons, on foot or in vehicles, engaged in the lawful and customary use of the highway in question.

2. In an action for damages for personal injuries, growing out of a trolley accident, the defendant sought a new trial on the ground of excessive damages. If the disability resulting from the injuries

was likely to be permanent, the damages would not be regarded as so excessive as to warrant an interference with the verdict. But it appearing that the trial was brought on so soon after a surgical operation on the patient, that sufficient time had not elapsed to enable the physicians to determine as to whether the operation would result in her complete or partial recovery, a result which they regarded, however, as highly probable, and it thereby appearing that justice had not been done by the verdict, it was held that in the exercise of its sound discretion, it became the duty of the reviewing court to set aside the verdict and grant a new trial.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices DIXON, HENDRICKSON and SWAYZE.

For the rule, *Frank Bergen.*

*Contra, Craig A. Marsh.*

The opinion of the court was delivered by

HENDRICKSON, J. The plaintiffs in this case, who are husband and wife, brought suit against the defendant company for damages resulting from a collision between a carriage in which the wife was riding and the defendant's trolley car. The carriage was overturned and the wife sustained severe bruises of the head, limbs and spinal column. The trial was had at the Union Circuit and the jury awarded as damages to the wife $12,000, and to the husband $3,000. A rule to show cause was allowed by the trial judge. The grounds relied on in the application for a new trial are (1) that the verdicts were against the weight of the evidence; (2) that they were excessive.

Under the first ground the contention is that negligence on the part of the defendant was not shown. The accident occurred at the intersection of Madison avenue and Fourth street, in the city of Plainfield. For convenience, I will refer to the wife as the plaintiff. She was riding in a buggy with her sister, who was driving-along Madison avenue

in a southerly direction, and as they approached Fourth
street, which runs east and west and along which ran the
defendant's railway, the driver halted, as plaintiff's wit-
nesses testify, when the horse was about twenty feet from
the track, and the driver looked east to Arlington avenue,
distant about two hundred and sixty-five feet, and saw no
car, and then looked west and saw no car, but saw a lumber
wagon approaching the crossing rapidly from that direction.
She then started to cross with her horse on a slow trot across
the track. There was evidence, also, tending to prove that
when the car was two hundred feet away the horse was within
twenty feet of the track and in plain view from the motor-
man's position. The evidence of the driver and the plaintiff
is that while in the act of crossing, and when the horse and
the two front wheels were over the track, they heard a noise
to the left and looked, and the car was virtually upon them
and immediately struck the hind wheels of the buggy, caus-
ing its overturn. As to the speed of the car, one or more
witnesses described it as rapid; one as about seven miles an
hour, while the motorman described it as "a pretty good
speed," which he designated as ordinary speed. The motor-
man further testified that when the car was about forty feet
from the crossing he first saw the carriage, and that then
the driver held up her lines as if she meant to let him pass;
that he then put on his brake and reversed the power, stop-
ping the car as quickly as he could. The car went over the
middle of the avenue before it was brought to a stop.

Do the facts in evidence present a case for the jury? It
is contended for the defendant that the car must have been
in sight when the driver looked, and that the failure to see
cannot aid the plaintiff in proof of negligence against the
company, citing *Righter* v. *Pennsylvania Railroad Co.*, 13
*Vroom* 180. But the fact here assumed is at least debatable.
There was evidence that the defendant's car, at the rate of
seven miles an hour, would make the distance in twenty-five
seconds. So it is quite probable that the car may not have
been in view when the driver looked. The law cited had

relation to the question of contributory negligence in approaching a steam railroad. Neither of these conditions exist in the present case. The question of contributory negligence does not arise, because the plaintiff was only a passenger in her sister's buggy at the time of the collision. The trolley has no supreme right to the use of the public street (*Woodland* v. *Street Railway Co., 37 Vroom* 455), and it cannot be run at a rate of speed incompatible with the lawful and customary use of the highway by others with reasonable safety. *Railway Company* v. *Block,* 26 *Id.* 605. Due care on the part of the motorman in approaching this crossing required that he should have his car under such control that the safety of the careful traveler thereon would not be endangered. *Traction Company* v. *Glynn,* 30 *Id.* 432.

Another principle involved in this case is that a driver at a crossing may obtain the right of way over a street railway when, in the reasonable exercise of his rights, he reaches the point of crossing in time to safely go upon the track in advance of the approaching car, the latter being sufficiently distant to be checked or stopped, if need be, by the exercise of due care. *Electric Railway Co.* v. *Miller,* 30 *Vroom* 423; *Earle* v. *Traction Company,* 35 *Id.* 573. See, also, *Traction Company* v. *Lambertson,* 30 *Id.* 297.

We think the facts developed at the trial fairly raised the question of negligence on the part of the defendant company, and that the evidence is sufficient to support the verdict upon that question.

But the second ground of the application impresses us more favorably. If the plaintiff's disability from her injuries should be permanent in character, we would not deem it to be our duty to disturb the verdict. Nor under ordinary circumstances would we be inclined to question the finding of the jury upon that subject. But it is disclosed by the evidence that at the time of the trial the plaintiff was unable to sit up and had to be brought into court ·in a reclining posture. This was not due to a condition directly 'caused by her injuries, but to the effect of a recent surgical operation,

which was expected to bring about the patient's complete recovery. The evidence shows that the plaintiff's injuries, for some time after the accident, did not appear to be so serious as they did later on. She was about in two weeks and could walk or ride unattended. She suffered much with her back and sought the treatment of an expert surgeon in New York, on November 22d, 1902, which was three months after the accident. She could then walk. She came to the doctor's office unattended and sat while telling the history of her case. The doctor said in his testimony that she was apparently a great sufferer, and showed a disinclination to sit long in one position, saying she could not do so. The result was that after a month or six weeks of ordinary treatment, the patient still complaining as much as ever, the doctor testified that an operation was resolved upon, which consisted of the removal, by an incision, of the coccyx at the end of the spine. This was done on April 4th, 1903, and the trial took place on May 6th following. According to the medical testimony, the lapse of a month or six weeks is necessary after the operation before relief to the patient may be expected. In reply to a question of plaintiff's counsel as to whether, if there was to be a recovery, it would be a matter of months or years, under the most favorable circumstances, the surgeon testified as follows:

"*A.* Well, I don't like to say years, yet I am willing to say months; now, my reason for this hesitancy is Mrs. Searles' extraordinary good looks; that she is apparently well nourished and developed; she seems to be a woman of a good deal of character, a woman of a good deal of fortitude, a good deal of physical resistance—that is, resisting power—and I confess to a degree of disappointment that she has not got better up to the present time; if Mrs. Searles should be a sufferer three or five years from now, I don't know that I should be disappointed, yet I see no reason why she should not ultimately recover from this affection."

Upon the question as to the final result of the operation, he further testified, on cross-examination, that the time had

hardly been sufficiently long to predicate an opinion upon it; that he thought the parts were not quite healed as yet and that it was hardly fair to assume yet that this was not going to be followed by a certain amount of relief, and that it was his earnest hope that the operation would be followed by a complete recovery. Another of plaintiff's physicians testified that he did not think sufficient time had then elapsed to get the full benefits that might follow from the operation.

We think that to permit the verdicts to stand under these circumstances might work injustice to the defendant, while the granting of a new trial would give the parties an opportunity to retry the causes, with the added light as to the nature and character of the plaintiff's injury and disability which the lapse of further time would naturally develop. This is a power the court may exercise in its sound discretion, where by reason of mistake or surprise at the trial it can see that justice has not been done by the verdict. *Hutchinson* v. *Coleman,* 5 *Halst.* 74; *Moore* v. *Railroad Co.,* 4 *Zab.* 268, 277 (Potts, J.)

The result is that the rules will be made absolute and a new trial granted.