J. C. PAYNE, Appellee, v. WATERLOO, CEDAR FALLS & NORTHERN RAILWAY COMPANY, Appellant.

**Street railways:** CARE IN OPERATION OF CARS. A street railway company does not have the exclusive right to its part of the street but must exercise a constant lookout for a clear track and keep its cars under reasonable control.

**Same:** PROXIMATE CAUSE. Where negligence of the company in the operation of a car is shown, the question of whether the fright of a horse and its swerving upon the track in front of the car was an independent proximate cause of the accident, or merely a contributing cause, is for the jury.

**Instructions:** FAILURE TO NUMBER SAME. While the trial court should number the paragraphs of its charge, still if the court's attention is not called to the omission and exception taken thereto at the trial it is too late to complain on appeal.

**New trial:** REMARKS OF COURT. Where no exception is taken to remarks of the court during the progress of the trial they can not be made the basis of error on appeal.

**Jurors:** CHALLENGE. Challenge to a juror for cause must specify the ground, to be made the basis of an exception on appeal. And where the challenge is on the ground of the relation of client and attorney and the examination of the juror discloses that such relation has terminated the court is justified in overruling the challenge.

**Street railways:** SPECIAL INTERROGATORIES. Special interrogatories should call for a finding upon ultimate facts. So that where the pivotal question was whether the proximity of the plaintiff to the street car track was observable to the motorman in time for him to have avoided the accident by the exercise of reasonable care, interrogatories regarding the actions of the horse drawing the vehicle in which plaintiff was riding, which were practically undisputed, did not call for ultimate facts and were properly refused.

**Same:** EVIDENCE: WARNING OF DANGER. The testimony of plaintiff in this action, as to warning the driver of the vehicle in which he was riding, of the danger to be apprehended from the ap-

proaching car, and indicating care on his part, was admissible for that purpose.

**Same:** EVIDENCE: EXAMINATION OF WITNESSES. Error can not be predicated on the exclusion of an answer where the witness had fully testified to the fact which the interrogatory was intended to draw out; or where the question is renewed in slightly different form and fully answered.

**Same:** EVIDENCE: DISCRETION. The court's discretion in sustaining or overruling objections to questions on the ground that they are leading and suggestive, or as improper redirect examination, will not be interfered with where no abuse of such discretion is made to appear.

**Same:** CONCLUSION: IRRELEVANCY. The mere conclusion of a witness is not admissible; and where the questions and answers do not fairly tend to aid the jury in ascertaining the facts relating to the matter under consideration, the evidence should be excluded.

**Same:** EVIDENCE: SPEED OF STREET CAR. It is not necessary that a witness be an expert to testify to the rate of speed of a street car, nor need he give his opinion of the number of miles per hour the car traveled. In the instant case the evidence should have been received, but in view of the entire record its exclusion was not prejudicial.

**Same:** EXCESSIVE VERDICT. A verdict for $6,000, for severe and permanent injury to the foot of plaintiff, who was a locomotive engineer, forty-five years of age, earning about $100 a month, with prospects for increased salary, and who was confined in a hospital for five weeks with medical and surgical expense of $800, is held not excessive.

*Appeal from Blackhawk District Court.*—HON. C. E. RANSIER, Judge.

TUESDAY, DECEMBER 12, 1911.

ACTION against a street railway company for personal injuries resulting from collision on the street. There was a verdict for the plaintiff. Defendant appeals.—*Affirmed.*

*Mullan & Pickett* and *F. E. Farwell,* for appellant.

*J. T. Sullivan* and *Edwards & Longley*, for appellee.

EVANS, J.—At the close of the evidence, the trial court overruled defendant's motion for a directed verdict. We will give our first attention to the error assigned on such ruling.

The accident involved occurred about ten o'clock in the morning on February 11, 1909, on Fourth street, in the city of Waterloo. The plaintiff was riding in a cutter with one Dr. Dunkelberg, who was the owner and driver of the horse and cutter. In this part of the city Fourth street extends due north, and the plaintiff and Dunkelberg were driving north thereon. The defendant's street railway is laid along the center line of such street. Between the railway and the curb was a space of about seventeen feet. The plaintiff and Dunkelberg were driving on the east side of the track within such space. There was considerable testimony that the horse became frightened and swerved toward the track and into dangerous proximity thereto, and that Dunkelberg was unable to control him in time to avoid a collision. Under the evidence the horse and cutter were from thirty feet to seventy-five or eighty feet in front of the car when the horse "lunged" toward the track. The corner of the car caught the cutter, and pushed horse and cutter before it for a distance of from sixty to ninety feet before it stopped. Both the occupants of the cutter were thrown out to its right side, and the plaintiff was severely injured in one of his feet. The petition charged that the car was run at a high and dangerous rate of speed and that the defendant negligently failed to stop the car after discovering plaintiff's danger and his proximity to the track. The general ground urged in support of the motion to direct the verdict was, and is, that the evidence failed to show that the accident was caused by any negligence of the defendant, and that the evidence did show conclusively that the fright of the horse was the independent proximate

cause of the accident. We can not incorporate herein the details of the evidence. It was sufficient to permit the jury to find that the car was not being operated under proper control.

I. The street railway does not have the exclusive right to its part of the street, and it must necessarily exercise a constant lookout for a clear track. This means, also,

1. STREET RAILWAYS: care in operation of cars.

that it must operate a running car under reasonable control. If it be true that the horse in its fright swerved upon the track so suddenly and so close to the approach of the car that the motorman could not, with reasonable diligence, have prevented the collision, then the defendant was not liable. But the evidence on this point was not so conclusive as to take the case from the domain of the jury. Granting that the accident would not have happened if the horse had not become frightened and shied toward the track, it does not follow necessarily that this became an independent cause of the accident.

If the defendant was in fact negligent, as charged in the petition, in the method of operating its car, then it was a question for the jury under proper instructions

2. SAME: proximate cause.

whether the fright of the horse and his swerving upon the track was an independent proximate cause, or whether it was merely a contributing cause of the collision. *Railroad Co. v. Bloch,* 55 N. J. Law, 605, (27 Atl. 1067, 22 L. R. A. 374); *Searles v. Railway Co.,* 70 N. J. Law, 388, (57 Atl. 134); *Newport News v. Nocolo Poolos,* 109 Va. 165, (63 S. E. 443); *Olney v. Omaha Railway,* 78 Neb. 767, (111 N. W. 784). The motion to direct was properly overruled.

II. Appellant complains because the trial court failed to number the paragraphs of its instructions as required by section 3708 of the Code. Concededly this provision of the statute ought to be obeyed. If the attention of the trial court had been directed to the omission, it would

doubtless have been supplied.  We think it devolved upon

<div style="margin-left: 2em;">3. INSTRUCTIONS: failure to number same.</div>

the appellant to point out the omission and take exception thereto in the trial court at or before the time the instructions were given. Having passed the matter at that time without objection, it is too late to complain now. *In re Evans,* 114 Iowa, 240; *Johnson v. Sioux County,* 114 Iowa, 137.

Appellant complains generally of the instructions, in that they were not fairly intelligible to the jury, and pleads his inability to specify the particular instructions complained of, because of the failure of the court to number the paragraphs as already stated.  We have examined the instructions, and do not find them amenable to the criticism made upon them, except in the failure to number. the paragraphs.  One specific part of the instructions is embodied in the argument of appellant, and is challenged on the ground that it deals with questions outside of this record. Without setting forth the specific portions complained of, it is sufficient to say that it must be considered with its context, and that it was a proper explanation to the jury of the general nature of the duties imposed by law upon defendant and its employees.  No other specific objection to the instructions is brought to our attention.

III.  Complaint is made of certain remarks of the court made during the trial.  It is said that they were in their nature extremely prejudicial.  Two instances only are

<div style="margin-left: 2em;">4. NEW TRIAL: remarks of court.</div>

preserved in the record, and they were made in connection with rulings upon the testimony.  It is perhaps true that each of them indicated a misapprehension on the part of the court as to the real state of the record.  In that sense they might be misleading to the jury.  They do not, however, impress us as being important or prejudicial to any degree.  If they were, we would have to say, nevertheless, that appellant took no exception thereto, and that it is not in a position to be heard thereon now.  *Osborn v. Ratliff,* 53 Iowa, 748.

IV. The appellant challenged the juror Banfield for cause. The challenge was in these words: "Defendant challenges juror Banfield for cause." The challenge was overruled and exception taken thereto. The ground of challenge which is urged upon our attention is that one of the attorneys in the case was attorney for the juror in a proceeding pending in such court. This ground of challenge was made in the trial court only by inference to be drawn from the nature of the examination of the juror. We have held that a challenge to a juror for cause can not be made the basis of an exception to be heard on appeal, unless the challenge states the ground thereof. *Bonney v. Cocke,* 61 Iowa, 303; *Haggard v. Andrew,* 107 Iowa, 417. It is to be said, also, that the final examination of the juror by the court indicated that the relation of client and attorney between the juror and plaintiff's attorney had terminated. The court was warranted in finding such to be the fact, and in overruling the challenge on that ground.

*5. Jurors: challenge.*

V. Appellant presented the following special interrogatories, and asked that they be submitted to the jury:

(1) Did the horse, which was attached to the cutter in which plaintiff was riding, suddenly and just prior to the accident, shy toward the railway track of the defendant?

(2) Was the horse and cutter in which plaintiff was riding being driven in a place of safety by the witness Dunkelberg along Fourth street until the horse shied toward the railway track?

(3) Would the cutter in question have been struck by defendant's car except for the shying of the horse toward the railway track?

These interrogations were refused, and complaint is made of such refusal. We think that none of these questions called for an ultimate fact. We must assume that the appellant would ask the jury to answer the first two questions in the affirmative, and the third in the negative.

Such finding would not determine any element of the plaintiff's case or of the defendant's defense. The "shying of the horse" was one of the circumstances of the case. It was practically undisputed. It was contended for by the defendant in evidence and pleaded by the plaintiff in his petition. The crucial question in the case was whether his proximity to the track was observable to the motorman for a sufficient time before the collision to have enabled him in the exercise of ordinary care to have avoided the accident. These interrogatories do not fairly touch that question. We think the trial court was justified in refusing them.

6. STREET RAILWAYS: special interrogatories.

VI. Complaint is made of many of the rulings of the trial court upon the admission of testimony. We can not deal specifically with all of them without extending this opinion unduly. The plaintiff testified that just before the collision he looked over his shoulder, and saw the car coming. The following question was put to him by his own counsel: "What, if anything, did you say to Dr. Dunkelberg when you discovered the car approaching at this rate of speed? Answer: I told him that there was a car coming, and that it was going to hit us." Proper objection was made both to the question and to the answer as incompetent and self-serving declaration, and the point is now urged upon us. The manifest purpose of the question was to show that the plaintiff used care to warn the driver of the vehicle of impending danger as soon as he discovered it. The testimony was admissible for such purpose. The appellant could have had it limited to such a purpose if he had so asked. The trial court struck out the last part of the answer "that they were going to hit us," and overruled the defendant's objection to the rest of the answer. The ruling was proper.

7. SAME: evidence: warning of danger.

The following cross-examination of plaintiff was objected to by his counsel, and the objection was sustained;

"Didn't Dr. Dunkelberg tell you, and didn't you tell a great many people at that time, that the horse shied at that pile of brick, and brought you up so close to the car track that the car struck you?" Also: "And that was the common purpose of both you and Dr. Dunkelberg at that time for him to take you in the cutter and carry you out to the place where you desired to go, to the north end of town, was it not?" As to the first question the plaintiff answered freely that he had told many people that the horse shied at the pile of brick. As to the second question, it was renewed in a slightly different form and fully answered immediately following the ruling of the court. No ground of complaint is shown here.

8. Same: evidence: examination of witnesses.

A number of objections to evidence were made by defendant on the ground that the questions were "leading and suggestive," and on the ground that they were not proper redirect evidence, and should have been made a part of the main case. As to all such objections, it is sufficient to say that it was within the fair discretion of the trial court whether to sustain or to overrule. No abuse of discretion appears.

9. Same: evidence: discretion.

VII. It appeared from the testimony of some of the witnesses for the defense that the rails were slippery with "sweat," and that this fact made it more difficult to stop the car. In rebuttal the following question was put to the plaintiff as a witness: "I will ask you to state whether you know what the weather conditions were in respect to whether they were such as would cause the rail to 'sweat.' (Defendant objects as incompetent, calling for a conclusion of the witness and not a statement of fact. Objection overruled, defendant excepts.) A. They were not." We think the objection was good, and ought to have been sustained. The question was not fairly adapted to aid the jury in determining whether the rails had "sweat" or not. The question and answer fur-

10. Same: conclusion: irrelevancy.

nished no information as to what the weather conditions in fact were; nor as to what weather conditions would produce "sweat."

These points, however, were covered to some extent by the preceding examination of the witness and afterwards by his cross-examination. On the whole we reach the conclusion that the error was not prejudicial.

VIII. Mrs. Simpkins was a witness in behalf of the defendant. She was a passenger on the car at the time of the collision. She testified:

I was accustomed to riding on the car frequently. . . . I remember about the rate of speed at which the car was going before it struck the cutter. Q. Now, just tell the jury in your own way, Mrs. Simpkins, at what rate of speed this car was running before it struck the cutter. A. I should say it was running at the usual rate of speed. (Plaintiff moves to strike the answer as immaterial and incompetent. Motion sustained. Defendant excepts.) Q. Now, just tell, Mrs. Simpkins, in your own way, whether the car was running rapidly, or whether it was running slowly, or at an ordinary rate. A. Just ordinary rate, I should say, not any more than usual. (Plaintiff moves to strike the answer as immaterial and incompetent. Motion sustained. Defendant excepts.) Q. Now, the question is, was it running very rapidly, or was it running at an ordinary rate of speed? By the court: She answered it, and the answer was struck out. Q. What did you say as to whether it was running rapidly or not, Mrs. Simpkins, or at a high rate of speed? A. I don't know how to answer it hardly. Q. Just answer it the best you can. A. I don't think it was running rapidly—any more than it generally does, as I say. (Plaintiff moves to strike the answer as immaterial and incompetent. Motion sustained. Defendant excepts.) By the court: You will direct your examination along some other line. Witness has stated she does not know anything about the number of miles per hour, and does not claim to be an expert and able to pass on that question. By Mr. Mullan: It does seem to me she ought to be permitted to say whether it was running rapidly or not. By the court: I think the questions and answers

have already clearly demonstrated to what extent she herself thinks she is qualified to answer.

We think the trial court erred at this point. It is not necessary that a witness should be an expert in order to testify as to rate of speed. *Chipman v. Pacific Ry. Co.*, 12 Utah, 68, (41 Pac. 563); *Johnson v. Oakland, etc., Ry. Co.*, 127 Cal., 608, (60 Pac. 170); *Potter v. O'Donnell*, 199 Ill., 119, (64 N. E. 1027); *Robinson v. Louisville Ry. Co.*, 112 Fed. 487, (50 C. C. A. 357).

11. SAME: evidence: speed of street car.

Nor is it necessary that a witness should state his opinion in miles per hour. The opinion of a witness in such a case is a mere approximation in any event. The witness who attempts to be specific and exact as to such rate of speed is often more to be distrusted than one who speaks in more general terms. Such evidence in either form is never conclusive, and seldom very satisfactory, but it is often the best that can be had in the nature of the case. The plaintiff testified that he looked backwards over his shoulder and saw the car seventy-five or eighty feet behind him, and that it was coming at twenty-five or thirty miles an hour. The proffered testimony of Mrs. Simpkins was fairly responsive to such testimony of plaintiff, and was quite as competent. There was other testimony showing the ordinary and usual rate of speed on this part of the route.

It is the view of the majority, however, that upon the whole record the exclusion of the proposed evidence was not prejudicial. The writer hereof is not able to reach this conclusion; the issue of fact at this point being vital to the case.

The verdict was for $7,000. It is claimed to be excessive. The trial court gave plaintiff the option to accept judgment for $6,000, or submit to a new trial. Appellant complains that the amount so fixed is also excessive. The plaintiff sustained severe injury to his foot. It resulted in the loss by sloughing of his

12. SAME: excessive verdict.

little toe and one of the toes next thereto, and of the first joint of his large toe. The foot was scraped in such a way as to remove a large area of cellular tissue. The foot has now a large amount of scarred tissue which is thin and sensitive and especially so to the cold. The loss of cellular tissue also leaves his foot to a degree uncushioned, and makes the use of his foot more or less painful. He was confined in the hospital five weeks and suffered much pain. His medical and surgical expenses amounted to about $800. He is a locomotive engineer by trade. As such, he was able to earn about $102 per month. Since his recovery he has gone back upon the same run and at the same wages. He was forty-five years of age. There were possible selections before him, subject to the seniority of other engineers, to runs that would pay from $170 to $180 per month. For three or four years before his accident he was engaged in the land business, and only worked about one-third of the time as an engineer. It is manifest that the damage suffered by him is very substantial.

On the other hand, the judgment is very large, and we are not without grave doubt as to whether it should stand. We reach the conclusion, however, that we can not properly interfere with it.

The judgment below is therefore *affirmed*.