WICHITA FALLS & S. R. CO. v. TUCKER.*
(No. 7125.)

'(Court of Civil Appeals of Texas. San Antonio. March 26, 1924. Rehearing Denied April 23, 1924.)

**1. Trial ⊚⇒219—Refusal to explain meaning of "wrong side" of street in submitting question whether automobile driver drove on wrong side held not reversible error.**

In action for injuries to automobile driver struck by defendant's train at crossing, refusal to explain to jury what was meant by the "wrong side" of the road in submitting special issue as to whether the driver was driving "on the wrong side of the street or crossing" *held* not error, in view of general knowledge of rule requiring driving on the right side.

**2. Railroads ⊚⇒324(2)—Statute as to duty of automobile drivers on public highways held inapplicable to railroad crossings.**

Acts 1920, 3d Called Sess. c. 53, § 1 (Vernon's Ann. Pen. Code Supp. 1922, art. 820k), as to duty of drivers of vehicles on public highways *held* inapplicable to railroad crossings, the law applicable thereto being Acts 1917, c. 207, § 17 (Vernon's Ann. Pen. Code Supp. 1918, art. 820*l*).

**3. Trial ⊚⇒350(2)—Court should submit only ultimate and not incidental and evidentiary issues.**

Court should submit only the ultimate issue and not issues incidental and evidentiary.

**4. Trial ⊚⇒352(4)—Refusal to submit issue not raised by pleadings not error.**

It is not error to refuse to submit issue not raised by the pleadings.

**5. Damages ⊚⇒174(1)—Testimony that automobile was "junk" after accident held admissible.**

Where witness had testified as to marketable value of automobile just prior to accident, testimony that the automobile was entirely destroyed in a collision with a train and was "junk," that witness sold it as such and received a certain price therefor, *held* admissible.

**6. Appeal and error ⊚⇒731(1)—Assignment of error as to excessiveness of verdict held too general for consideration.**

An assignment that verdict was excessive without pointing out how or in what manner it was excessive, or that jury was influenced by passion or prejudice, and without calling to court's attention any facts showing prejudice or influence, *held* too general for consideration.

**7. Damages ⊚⇒132(3)—$10,000 verdict for permanent injury to spine held not excessive.**

$10,000 awarded 29 year old taxi driver, who before accident was earning from $300 to $700 per month, for severe injury to spinal column causing permanent curvature, largely incapacitating him from pursuing his occupation, *held* not excessive.

Error from District Court, Stephens County; C. O. Hamlin, Judge.

Action by M. E. Tucker against the Wichita Falls & Southern Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

G. O. Bateman, of Breckenridge, and Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for plaintiff in error.

W. A. Shields, of Houston, and Merritt & Leddy, of Dallas, for defendant in error.

COBBS, J. Defendant in error sued plaintiff in error to recover damages by reason of injuries received by him while driving a Hudson automobile over a railroad crossing along Dyer street, in the city of Breckenridge, Stephens county, Tex., about 9 o'clock at night. In traveling along said street it was necessary to cross the tracks of the Wichita Falls & Southern Railroad Company, and just as he was crossing the track he was struck by the engine of one of plaintiff in error's south-bound trains, which seriously and permanently injured defendant in error, and demolished and destroyed his automobile.

Defendant in error further avers that in said collision he was struck on the back and shoulders and particularly in the lower part of his back, or the lumbar region thereof, causing serious and permanent injuries to him, and causing a curvature of the spine, and seriously and permanently injuring the spinal column, the vertebræ, the muscles, and cartilage and tissues adjacent thereto, the nerve centers adjacent thereto and extending therefrom, and the tendons and ligaments in his back and particularly in the lumbar regions—all of which injuries are permanent, serious, and progressive in their nature.

At the time of the injury there was another train standing on a track just west of the track on which the Wichita Falls & Southern Railroad Company's train was coming, which standing train extended up to the north edge of Dyer street, and so obstructed defendant in error's view that he did not see the approaching train until it was right on him. Before attempting to cross the track he stopped his automobile and looked and listened, and, hearing the approach of no train, nor seeing any, attempted to make the crossing when he was so struck and injured.

Defendant in error alleges that prior to his injury he was an able-bodied man, and was able to earn and did earn from $300 to $750 per month, that he has spent about $650 for doctor's bills and medical bills, and that the car so destroyed, prior to the collision, was of the value of $1,950.

Plaintiff in error filed various exceptions and answers.

The case was tried with a jury upon special issues, which were answered favorably

to defendant in error, and a judgment in his favor for $10,900, was entered.

While this case is presented here with a voluminous record and numerous assignments of error, we think, boiled down, few errors assigned would cover all the questions raised in the case.

The court submitted more than 30 special issues, and the plaintiff in error requested some 82 special issues. There are 84 formal bills of exception to the refusal of the court to give the same, and the amended motion for a new trial contains 119 assignments of error.

This case does not differ much from those cases often before the courts, designated as railroad crossing injuries, though greatly magnified here by the various issues presented, the enormous record, and lengthy briefs.

But few real questions of law arise here, and they are such as have been many times disposed of by the appellate courts and become the settled law of the land. Keeney v. Wells (Mo. App.) 257 S. W. 1077.

Illustrative of the testimony introduced in this case, there are a number of photographs showing the road traveled, the railroad crossing, standing train, houses, and other obstructions at or near the place of accident, and a large map showing the route traveled by defendant in error.

Defendant in error was a taxicab driver, and on the night of the accident was serving passengers and had driven considerably about the city.

The charges or special issues given, which are unusually lengthy, submitted to the jury every supposable or possible issue or phase of negligence that could arise or happen at a railroad crossing.

[1] We do not see how plaintiff in error was injured by the refusal of the court to explain to the jury what was meant by the wrong side and what was the right side of the road that defendant in error traveled, just before he got to the railroad crossing, and before he undertook to cross the tracks. He stopped his car on reaching the crossing, and looked and listened, then, after satisfying himself there was no danger, entered upon the tracks to cross over. Evidently the jury knew what the court meant by the charge, "Did the plaintiff, M. E. Tucker, drive his automobile on the wrong side of the street or crossing," for they answered, "No." That knowledge, independent of any statute, is common in America, and every one knows that it is the rule of the roads in this country to go on the right-hand side, just as the reverse is the common rule in England. Article 820k of the Penal Code, as amended by Act 1920 (Vernon's Ann. Pen. Code Supp. 1922, art. 820k), provides:

"The driver or operator of any vehicle in or upon any public highway in this state, shall drive or operate such vehicle in a careful manner with due regard for the safety and convenience of pedestrians and all other vehicles or traffic upon such highway, and whenever practicable shall travel upon the right-hand side of such highway, * * * unless the road on the left-hand side of such highway is clear and unobstructed for a distance of at least fifty yards ahead."

[2] This statute has no application to railroad crossings. The law applicable to railroad crossings is contained in section 17 of Act April 9, 1917 (Vernon's Ann. Pen. Code Supp. 1918, art. 820l), and is as follows:

"Any person driving a motor vehicle or motorcycle, when approaching the intersection of a public street or highway with the tracks of a steam railroad or interurban railroad, where such street or highway crosses such track or tracks at grade, and where the view of the said crossing is obscured, either wholly or partially, shall before attempting to make the said crossing, and at some point not nearer than thirty feet of the said track, reduce the speed of his motor vehicle or motorcycle to a speed not to exceed six miles per hour before making the said crossing, unless there are flagmen or gates at such crossing and such flagmen or gates show that the way is clear and safe to cross such track or tracks, and provided further that the provision of this section shall not apply to persons crossing interurban or street railway tracks within the limits of incorporated cities or towns within the State."

See Ry. v. Singletary (Tex. Civ. App.) 251 S. W. 325.

Article 820k is a criminal statute and has been held inoperative in a number of cases. Russell v. State, 88 Tex. Cr. R. 512, 228 S. W. 566.

It has been held that section 17, applying to railroad crossings, was enacted for the protection of the public traveling the public highways, and who are about to use the crossing; and, as to such persons, failure of the railroad company to give the required signals is negligence per se, but, as to persons not using the highway, whether such failure is negligence is a question of fact for the jury. Williams v. Cross, 19 Tex. Civ. App. 426, 47 S. W. 478.

The court did not err in refusing all the charges requested by plaintiff in error on the subject. Under the charges the court gave, the jury found defendant in error stopped, looked, and listened before attempting to cross the track; that he exercised ordinary care to discover the approaching train and the headlights thereof; that he exercised ordinary care in the speed at which he was driving his car, in going over the crossing; and that he was not traveling upon the wrong side of the road.

The propositions and assignments are too numerous to set out and discuss separately, because each and every one has been covered by the court's charges. We have carefully examined them with the court's charges, which themselves are entirely too numerous, but the idea of the court evidently was to

place before the jury plaintiff in error's contention as well as defendant in error's, and that the court accomplished. To have given many of the requested charges would no doubt have given undue prominence to some of the issues submitted in different forms, a practice uniformly condemned by our appellate courts.

[3, 4] It is the duty of the court to submit to the jury only the ultimate issue, and not issues incidental and evidentiary. Texas City Transportation Co. v. Winters (Tex. Civ. App.) 193 S. W. 366; Miles v. Harris (Tex. Civ. App.) 194 S. W. 839; San Antonio Railway Co. v. Stuart (Tex. Civ. App.) 178 S. W. 17; Heath v. Huffhines (Tex. Civ. App.) 168 S. W. 974. It is not error to refuse an issue not raised by the pleadings. Lone Star Brewing Co. v. Willie, 52 Tex. Civ. App. 550, 114 S. W. 186.

[5] We do not think there was error in allowing the witness to testify that the automobile was entirely destroyed and was "junk," and that he sold it as such, and the price he received. He had testified as to its marketable value just prior to the accident. Obviously it had no marketable value after its destruction as a going automobile.

[6] The hundred and sixteenth assignment of error is as follows:

"The court erred in rendering judgment herein for the plaintiff in the sum of ten thousand ($10,000) dollars in answer to special issue No. 30, submitted to the jury, because said sum was excessive in that the sum of ten thousand ($10,000) dollars was more than the plaintiff was entitled to in so far as this issue was concerned."

This assignment does not point out how or in what manner the verdict is excessive, nor that the jury was influenced by passion or prejudice in fixing the sum. No fact has been called to our attention to show any prejudice or influence exerted upon the jury to wrest from the plaintiff in error a greater sum than defendant in error "was entitled to." Our courts have universally condemned such assignments, as too general for consideration. Cannon v. Cannon, 66 Tex. 685, 3 S. W. 36; Railway v. Hinzie, 82 Tex. 623, 18 S. W. 681; City of Galveston v. Devlin, 84 Tex. 326, 19 S. W. 395; I. & G. N. Ry. v. McVey (Tex. Civ. App.) 81 S. W. 1001; Houston Railway v. Shults (Tex. Civ. App.) 78 S. W. 45.

[7] The injury done to defendant in error was very great, for he suffered a severe injury to his spinal column, causing a curvature thereof, which was permanent, and largely incapacitated him from pursuing an occupation from which he was earning from $300 to $700 per month. He suffered the most intense physical pain, and will continue to so suffer the balance of his life. He was only 29 years old on the date of the trial.

This case seems to have been fairly tried. The statement of facts contains 200 pages of typewritten manuscript, including maps showing the territory and roads traversed by defendant in error, the railroad tracks, trains, engine, houses, and other obstructions along the track. The jury could not have had a better perspective, and with the oral testimony they were fully advised of the issues. The case was so well developed by the testimony as to give almost the same view that would be had by an ocular demonstration of the ground itself.

They found every issue in favor of defendant in error. We think the elaborate special charges submitted every issue fairly and properly for the jury.

We see no error in any ruling of the court, in not submitting the issues requested by the plaintiff in error. We find no error assigned that requires a reversal, and the assignments are all overruled, and the judgment of the court is affirmed.