MAHLON SLABAUGH, guardian of Isaac D. Yoder, et al., appellees, v. ELDON MILLER, INC., appellant.

No. 48086.

(Reported in 55 N.W.2d 528)

30

November 11, 1952.

John D. Randall, of Cedar Rapids, and Messer, Hamilton, Cahill & Bartley, of Iowa City, for appellant.

D. C. Nolan, of Iowa City, and T. Reagan Adams, of Wellman, for appellees.

THOMPSON, J.—On July 3, 1950, Isaac D. Yoder, then nineteen years of age, was driving a Chevrolet truck in a northerly direction on U. S. Highway 218 between Iowa City and Cedar Rapids. The action herein, so far as Yoder is concerned, is prosecuted in the name of his guardian.

The truck was owned by the other plaintiff, Simon Mullett. Yoder was an employee and was engaged in Mullett's business. He was accompanied by Richard Gingerich, then fifteen years of age, who was not an employee of Mullett.

At a point roughly one-half way between Iowa City and Cedar Rapids, and about one and one-half miles southeast of the village of Shueyville, a semitrailer truck owned by the defendant and driven by one Dale Halter was proceeding southeasterly on the same highway. The Miller truck was a gasoline transport weighing about 23,000 pounds. As the two trucks met there was a collision, evidently between the front left-hand corner of the plaintiff's truck and a point on the defendant's vehicle somewhere back of the front wheels. In other words, the front of the defendant's truck had cleared, but there was a "sideswiping" between the two vehicles as above described.

The plaintiff Yoder filed his petition claiming for personal injuries, and Mullett filed a separate petition asking recovery for the total loss of his truck, less $175 salvage obtained for it as junk. The two petitions were tried in one action, resulting in verdicts for both plaintiffs.

The defendant assigns four errors as grounds for reversal. Three of them—Nos. 1, 2 and 4 apply to the cases of both plaintiffs; No. 3, dealing with the question of damages to the truck, to the claim of Mullett only. We shall consider them in order, with further statement of facts as they apply to each assignment.

I. The first assigned error goes to the failure of the court

to direct a verdict for defendant because, it is said, there was no proven negligence of defendant's driver, no competent evidence that any negligence of defendant was the proximate cause of the collision, and that contributory negligence of the plaintiff driver appears as a matter of law. In argument defendant seeks to sustain these allegations by the so-called "physical facts" rule. It is urged that the testimony offered by the plaintiffs is so strongly in conflict with, and so contradicted by, the physical facts shown in evidence that it cannot be true, and the court should have so held. The plaintiff driver, Yoder, and his companion, Gingerich, testified that defendant's truck, just before and at the time of the collision, was considerably over the center line of the pavement and upon its left-hand side of the roadway; that Yoder drove his truck as far to the right as he could go, there being a guard rail on his right-hand side which prevented him getting his vehicle entirely off the pavement; and that the accident was occasioned by this negligence of Halter, who drove defendant's truck. As against this there is the testimony of Halter, who placed plaintiff's truck on the left or "wrong" side of the road; some evidence as to "gouge" marks on the paving leading from a point on the west, or left side as to plaintiff's vehicle, to the rear of plaintiff's truck as it stood immediately after the accident; and pictures of the two vehicles showing their location when they came to rest.

It is not contended, of course, that Halter's testimony in itself would be sufficient to require a peremptory verdict by direction of the court. The pictures show defendant's truck off the highway to its right, with the plaintiff's Chevrolet largely, if not altogether, upon its right side of the road, standing somewhat across the pavement with the front end about on, or possibly a trifle across, the middle line. The marks on the roadway are somewhat persuasive, but we think not sufficiently so to require an application of the rule contended for by defendant. The question before us is not whether we would have decided the facts as the jury did. It is common knowledge that the trucks which so much occupy our highways are so wide there is little if any over-plus of space left on the side of an eighteen-foot pavement, such as the one here, on which they are traveling. When two trucks meet on such a road there is a very slight

margin for error. How motor vehicles will rebound after a collision is something no one can definitely say. A car, or truck, which is clearly upon the left-hand side may be driven back upon its own proper part of the highway by the force of the collision, and conversely the one which is struck while lawfully in its own lane may rebound across the pavement to the left side. Granted that there is room for argument that this is unlikely, and that some weight may be attached to the positions of the vehicles as they come to a stop after colliding, we think whatever that weight may be is ordinarily a question for the jury.

■■ Much the same comment may be made as to the marks on the paving. Often there are skid marks which seem to indicate the true situation; here it is said there were marks of a scratching or gouging. We are of the opinion it would be a dangerous precedent to say these could so overbear direct opposing testimony of witnesses that the court should say they must perforce be taken as true. It should be noted there had been some rain on the morning of the collision, which took place about 9:15 to 9:30 a. m. Other cars had passed the point of the accident before the witnesses who testified to the marks saw them, and the pavement was not otherwise entirely clean. The marks are persuasive, but not conclusive. The "physical facts" rule is to be applied sparingly, and the showing must be quite conclusive. Such is not the situation here.

■ II. The second error assigned is that the court submitted plaintiffs' specification of negligence No. 2, which alleged defendant's truck immediately prior to and at the time of the collision was being driven at a high and excessive rate of speed under the circumstances and conditions then existing, when there was no evidence to support this allegation. This is the ground alleged in the exceptions to instructions, to which, of course, defendant is limited on this appeal. He argues, in addition to the claim of lack of supporting evidence, that the court should not have adopted the plaintiffs' language "high and excessive", because it tended to give the impression that the court itself believed this to be the fact. It is also argued that speed could not have been the proximate cause of the collision. Neither of these two latter contentions was made by the exceptions to the instructions, and under well-known rules cannot be con-

sidered. R. C. P. 196. It is true that in the motion to direct it was alleged there was no competent evidence in the record to prove that any negligence of the defendant was the proximate cause of the damage. But the assignment of error which we are considering here does not raise the point of the motion to direct, but only the alleged mistake of the court in submitting speed in its instructions. In any event, the issue of proximate cause was properly submitted.

██ We think the evidence of undue speed on the part of the defendant is sufficient to support the submission of the issue. The plaintiff Yoder said, as a witness: "I was driving about forty miles per hour and Miller's truck was probably going as fast as I was." The witness Gingerich testified: "It looked like he [the Miller truck] was going pretty fast."

In McLaughlin v. Griffin, 155 Iowa 302, 305, 135 N.W. 1107, 1108, we said: "Another witness, over objections, was permitted to testify that the automobile was going pretty fast. This is said to have been a conclusion of the witness, who had no expert knowledge. Such objections have heretofore been held untenable."

In Payne v. Waterloo, Cedar Falls & Northern Ry. Co., 153 Iowa 445, 454, 133 N.W. 781, 784, is this language: "It is not necessary that a witness should be an expert in order to testify as to rate of speed. * * * Nor is it necessary that a witness should state his opinion in miles per hour. The opinion of a witness in such a case is a mere approximation in any event."

The size and weight of defendant's truck and the condition of the pavement are material here. There was sufficient evidence to justify the submission of the issue of speed.

██ III. The third error assigned by defendant goes only to the petition of Simon Mullett. The assignment is thus stated:

"The error of the court in overruling the motion of the defendant made at the close of plaintiffs' case wherein the defendant moved to strike all evidence on the part of the plaintiff with respect to the alleged damage because of total loss of his vehicle for the reason that there was no foundation laid and no competent evidence introduced to sustain the burden of proving such damage and the error of the court in instructing the jury

that the measure of the plaintiff Simon Mullett's recovery is the difference between the reasonable market value of his truck immediately before and immediately after the accident."

At the close of plaintiff's evidence defendant moved to strike all evidence pertaining to the alleged damage because of loss of the Mullett truck "for the reason that there is no competent evidence distinguished from the conclusion of the witness as to the fact that the cost of repairs for replacing the said vehicle was greater than the value of the vehicle prior to the accident, and that the plaintiff has therefore utterly failed to prove a proper measure of damages, and that if there be any evidence which tends to show such a loss the same is mere opinion and conclusion of the witness and no fact, and that the same has not been properly proven."

This motion was renewed at the close of all the evidence and was denied on each occasion. The court then gave the jury instruction 15:

"You are further instructed that the measure of plaintiff Simon Mullett's recovery is the difference between the reasonable market value of his truck immediately before and immediately after the accident, not to exceed the amount claimed by him, to-wit, $1625. In no event should you allow plaintiff Mullett more than the sum asked by him, to-wit, $1625."

To this defendant excepted, saying that "there is no competent evidence in the record as distinguished from the conclusion of the plaintiff, Mullett, as to the fact that the vehicle could not have been repaired and placed in as good condition as it was before the accident."

Defendant's argument seems to go somewhat further than either his motion to direct or his exceptions to the instruction, but he is of course limited upon this appeal to the points properly called to the attention of the lower court. It is true that the trial court told the jury peremptorily that the measure of damages was the difference between the reasonable market value of the truck immediately before and after the accident. The jury was not left to determine whether the evidence showed a total loss, or inability to place in as good condition after the colli-

sion as it had been before. Whether an objection to this would have been good we need not determine, for defendant did not raise the question. His position, both upon his motion to direct and his exceptions to instructions, is that there was no evidence to sustain the instruction. It follows that, if there was such evidence, his assignment of error at this point is without merit. At no time does he say to the court that, even if there is some evidence, you should leave the determination of the proper measure of damages to the jury.

The evidence to sustain a finding there was such a total destruction of the plaintiff's truck that it could not be repaired so as to be placed in as good condition as before the accident is furnished largely by Mullett himself. He testified, without objection, that:

"I would say the reasonable market value of my truck before this accident was about $1800. I would say the reasonable market value of what was left of it after the accident was $175. That's what I got for it. I sold the remains for salvage after it was wrecked. * * * I sold it to some company in Cedar Rapids. I do not know whether that was the reasonable market value of the truck in its condition after the accident, but that's what I got for it. I thought I should have gotten a little more, but that was what I got for it. I guess it was evidently the fair market value." On redirect examination he said: "My truck could not have been reasonably repaired and put back in the condition as it was before the accident. It was demolished."

This, with the pictures showing considerable damage to the truck, comprises the entire evidence on this point. Defendant insists it is insufficient to warrant submission of the case to the jury upon the question of damage to the truck. We are unable to agree.

There can be no real dispute that the owner of personal property is qualified and competent to testify to its value. Kohl v. Arp, 236 Iowa, 31, 35, 17 N.W.2d 824, 169 A. L. R. 1067. Defendant does not seriously dispute this general rule, but says that it does not apply when the owner says he does not know the value. Here reference is made to Mullett's testimony as to the value after the collision. It is evident he was giving a report on

what he got for it as junk, rather than any estimate based on knowledge of its real market value. But we hold that his testimony was sufficient, at least in the absence of objection, to require submission to the jury.

It is said in 15 Am. Jur., Damages, section 348, page 786: "* * * there is no universal test for determining the value of property injured or destroyed, and the mode and amount of proof must be adapted to the facts of each case. * * * Where the value of property is in controversy, its market value, if it has any, may be shown by proof of the price at which the property had been previously sold * * *." It may well be doubted whether it can be fairly said that an automobile damaged to the extent that it has value only as salvage has any real market value which can be determined except by what it will bring from the dealer in junk. The damage and the parts of the car injured, destroyed or remaining of some value will vary so widely that it will generally be a practical impossibility to find any real market value. Or, to put it another way, the price that the wreck will bring is perhaps as good a criterion as can be found to establish its reasonable value.

In Mann v. Des Moines Railway Co., 232 Iowa 1049, 1074, 7 N.W.2d 45, 59, there was a very similar situation. The owner of the wrecked automobile testified that it was worth $355 before the collision, and he received $50 for it as salvage or junk. Recovery was limited to the sum of $305. Justice Bliss, speaking for this court, said:

"Appellant complains that there was no specific evidence of the reasonable market value of the automobile after the collision. There appears to have been no objection to any of the value testimony. The condition of the wrecked car had been described. As an automobile, it then had no market value. * * * The appellant was in no way prejudiced."

See also Monson v. Chicago, Rock Island & Pacific Ry. Co., 181 Iowa 1354, 1364, 1365, 159 N.W. 679.

No evidence contradicting the plaintiff's testimony was offered by the defendant, and we find no error in the rulings of the trial court at this point.

But defendant says there was no competent evidence the truck was so damaged that it could not be repaired so as to be put in as good condition as before. Here again we have the testimony of Mullett, when he said it could not have been reasonably repaired and put back as it was before the accident; that it was demolished. Perhaps the pictures showing the condition of the truck aid somewhat, although we do not think that standing alone they would have been sufficient to show lack of repairability. Defendant says, granting that an owner of personalty may give his opinion as to its market value, he is still not qualified to say it is totally destroyed or cannot be repaired. The question is not free from difficulty, but it has been ruled against defendant's contention by the Texas Court of Civil Appeals in Wichita Falls & S. R. Co. v. Tucker, 261 S.W. 518, 520. The Texas court, in an identical situation, there said:

"We do not think there was error in allowing the witness to testify *that the automobile was entirely destroyed and was 'junk,' and that he sold it as such, and the price he received.* He had testified as to its marketable value just prior to the accident. *Obviously it had no marketable value after its destruction as a going automobile."* (Italics ours.)

On the question of the weight of evidence admitted without objection on a somewhat similar point, see Lonnecker v. Van Patten, an Iowa case not reported in Iowa Reports, found in 179 N.W. 432, at 434.

IV. The fourth error assigned is the failure of the trial court to "submit the statutory speed restrictions as one of the specifications of negligence on the part of the defendant for the reason that under the evidence the jury could reasonably find plaintiff's truck was being driven in excess of the statutory speed on the Iowa highways." This point was raised by exceptions to instructions and in defendant's motion for new trial. The scope of the complaint was somewhat broadened in the motion for new trial, where it was alleged that the question of the statutory speed limit was important upon the issue of plaintiffs' contributory negligence. But, of course, defendant could not so "mend his hold." His exceptions to instructions are the measure of his rights on this point.

The question of statutory speed is not available to defendant now. R. C. P. 196. If error was committed, which we do not determine, it has become moot through the verdict of the jury. A finding that plaintiffs were entitled to recover necessarily implies a finding of negligence on the part of the defendant. The alleged failure of the trial court to submit statutory speed restrictions concerns defendant's counterclaim rather than his defense to plaintiffs' allegations. It having been found he was guilty of negligence, under no circumstances could he have recovered upon his counterclaim. Contributory negligence is established by the jury verdicts against him. Error, if such there was, was nonprejudicial. Smith v. Pine, 234 Iowa 256, 268, 12 N.W.2d 236, and cases cited; Ferguson v. Lux, 193 Iowa 1139, 1141, 1142, 188 N.W. 898; Hanley v. Fidelity & Casualty Co., 180 Iowa 805, 826, 827, 161 N.W. 114.

V. Finally, defendant says, if no specific error be found sufficient for a reversal, we should hold that the cumulative effect of the errors pointed out, *and other errors,* prevented him having a fair trial, and so set aside the judgments below. We are not advised what the "other errors" may have been, and so are asked to sail forth upon an unknown sea without a compass. Obviously, we must decline. Nor should we grant a new trial under the general powers of a court to see that justice is done. We have several times said that "the discretion of the trial court to order a new trial is greater than that of the appellate court." Burke v. Reiter, 241 Iowa 807, 817, 42 N.W.2d 907, 913; Bletzer v. Wilson, 224 Iowa 884, 888, 276 N.W. 836; Lewellen v. Haynes, 215 Iowa 132, 134, 244 N.W. 701.

We find no prejudicial error.—Affirmed.

All JUSTICES concur.