FAGEN ELEVATOR, appellee, v. JOHN PFIESTER, appellant.

## No. 48158.

(Reported in 56 N.W.2d 577)

634

JANUARY 13, 1953.

REHEARING DENIED MARCH 13, 1953.

Edwin Willcockson and F. M. Beatty, both of Sigourney, for appellant.

Livingston & Day and Edmund D. Morrison, Jr., all of Washington, for appellee.

GARFIELD, J.—This is a law action for damages growing out of a collision in daytime at the junction of paved primary highways between plaintiff's truck and defendant-counterclaimant's automobile. There was a jury verdict and judgment for plaintiff and defendant-counterclaimant appeals.

Plaintiff's Chevrolet truck loaded with 3½ tons of feed was traveling east on highway 92. Defendant was driving his Frazier sedan south on highway 21 toward its junction with 92. No. 21 from the north forms a paved Y as it joins 92, to facilitate turning east or west on 92 from 21. Top of the Y is to the south along the north edge of 92. Highway 21 does not extend south of its junction with 92 but a gravel highway does, with its center line about 28 feet east of the center line of No. 21. There is a stop sign facing north on the west side of 21 about 8 feet south of where the pavement begins to widen at the north end of the Y.

It is in dispute whether defendant stopped at this stop sign which is about 92 feet north of the south edge of the pavement on No. 92. That pavement is 18 feet wide exclusive of the Y. The Grovier pickup truck was parked facing south in about the center of the Y and plaintiff's witness Rockwell was standing at the east (left) side of the pickup. Defendant drove south through the Y on the east side of the pickup, intending to cross 92 and enter the gravel highway running south.

Defendant testifies he stopped at the stop sign and after he passed the Grovier pickup, when he was within 8 or 10 feet of the pavement on 92, he saw plaintiff's truck coming from the west, thought he had time to cross 92 and drove ahead. Just after he had crossed the pavement, the left front of plaintiff's truck collided with the right rear door of defendant's car on the gravel about 6 feet south of the pavement. Defendant was seriously and permanently injured and his automobile was badly wrecked.

Plaintiff's action sought recovery for damage to its truck on the ground, insofar as submitted to the jury, the collision was caused by defendant's failure to (1) stop at the stop sign and (2) yield the right of way to the truck. Defendant's counterclaim in two divisions asserted the collision was caused by negli-

gence of plaintiff's truck driver in different respects, one of which was submitted to the jury. There was a verdict and judgment for plaintiff for $653. Defendant's motion for new trial was overruled and he has appealed. We think it desirable to consider the errors assigned in a little different order than that presented in the briefs.

I. The first division of defendant's counterclaim alleged the collision was caused by negligence of plaintiff's driver, Saltzman, in failing to have the truck under control and to reduce its speed to a reasonable and proper rate when approaching and traversing the intersection. Clearly these charges are based on claimed violation of section 321.288, subsection 3, Code, 1950. Defendant also made other allegations of negligence against plaintiff. The court refused to submit to the jury the above charges of failure of control and reduction of speed and such refusal is assigned as error.

Defendant also requested the court to instruct the jury that one of his contentions was that plaintiff's driver was negligent in not having his truck under control and reducing its speed to a reasonable and proper rate when approaching and traversing the intersection. These requests also contained the substance of Code section 321.288, subsection 3, as to the duty of one approaching and traversing an intersection to have his vehicle under control and reduce its speed to a reasonable and proper rate. The familiar statement substantially as found in Arenson v. Butterworth, 243 Iowa 880, 887, 54 N.W.2d 557, 561, and citations, as to when a motor vehicle is under control was included in the requested instructions. The refusal of these requests is also assigned as error.

The second division of defendant's counterclaim sought recovery from plaintiff on the theory of last clear chance. The court refused to submit this claim to the jury and such refusal is the first error assigned and argued.

In our opinion the above rulings were not prejudicial to defendant. The issues the court refused to submit to the jury all pertained to defendant's right to recover on his counterclaim. The verdict for plaintiff foreclosed consideration of the counterclaim. The jury was instructed not to consider the counterclaim

if it found for plaintiff on its claim. No objection was taken to this instruction. It was therefore the law of the case. Nichols v. Kirchner, 241 Iowa 99, 105, 40 N.W.2d 13, 17, and citations; Larimer v. Platte, 243 Iowa 1167, 1170, 53 N.W.2d 262, 264, and citations.

The verdict for plaintiff necessarily includes the findings. defendant's negligence was the proximate cause of the collision and plaintiff's driver was free from negligence which caused or contributed directly thereto. Such findings are fatal to defendant's right to recover on either division of his counterclaim. There can be no question of this as to the first division. Even though defendant's contributory negligence would not prevent his recovery from plaintiff on the last-clear-chance theory asserted in the second division, freedom from negligence of plaintiff's driver which caused or contributed to the collision would clearly do so.

Harriman v. Roberts, 211 Iowa 1372, 1375, 1376, 235 N.W. 751, holds the erroneous striking of a counterclaim and refusal to submit it to the jury in an automobile collision case was without prejudice where the jury found for plaintiff on his claim. Davidson v. Vast, 233 Iowa 534, 544, 545, 10 N.W.2d 12, 18, is a similar decision. It cites Harriman v. Roberts, supra, and precedents from other states.

Refusal in such a case as this to submit one or more charges of negligence in a counterclaim where the jury found for plaintiff on his claim is held without prejudice in Smith v. Pine, 234 Iowa 256, 268, 12 N.W.2d 236, 243; Beck v. Dubishar, 240 Iowa 267, 271, 36 N.W.2d 438, 439, 440; Slabaugh v. Eldon Miller, Inc., 244 Iowa 29, 38, 55 N.W.2d 528, 533.

See also Rubio Savings Bank v. Acme Farm Products Co., 240 Iowa 547, 560, 37 N.W.2d 16, 23, 9 A. L. R.2d 459; Dosland v. Preferred Risk Mutual Ins. Co., 242 Iowa 1220, 1229, 49 N.W.2d 823, 828, which hold error in instructions upon a counterclaim is without prejudice where the verdict on plaintiff's claim is based on findings which would bar recovery on the counterclaim.

II. In his reply brief defendant apparently seeks to avoid the effect of the authorities just cited, as to the refusal

to give his requested instructions above referred to, by contending such instructions, at least in part, bear upon the issue of freedom of plaintiff's driver from contributory negligence. This contention appears not to have been made in the trial court and seems to be an attempt by defendant to "mend his hold."

The requests do not mention the issue of freedom of plaintiff's driver from contributory negligence and there is no indication they were designed to deal with it or that the trial court so understood. Nor do defendant's exceptions in the trial court to the refusal to give these requests raise the point now urged. And defendant took no exception to the instructions given on freedom of plaintiff's driver from contributory negligence. Our conclusion at this point finds support in Slabaugh v. Eldon Miller, Inc., supra, 244 Iowa 29, 38, 55 N.W.2d 528, 533.

■ III. Plaintiff's driver, Saltzman, testified that when he first saw defendant's car he reduced the speed of the truck from about 40 to 35 miles per hour, the car was 5 or 10 feet north of the pavement on No. 92 when he first realized defendant was not going to yield the right of way, he then slammed on the truck brakes and started to pull off on the south shoulder. Defendant brought out on cross-examination of Saltzman that he did not reduce speed of the truck below 35 miles per hour until the automobile was within 5 or 10 feet of No. 92. The witness was then asked, "Could have, couldn't you?" His answer, "Yes I could have", was stricken on plaintiff's motion as irrelevant and immaterial. The ruling is assigned as error.

We think the answer should not have been stricken. No objection was made to the question until after it was answered and no excuse was given for the delay in objecting. (See Kuiken v. Garrett, 243 Iowa 785, 804, 51 N.W.2d 149, 160, and citations.) Clearly the answer was neither irrelevant nor immaterial. Nor was it objectionable on any ground now suggested. However, it appears defendant suffered little if any prejudice from the ruling and it is insufficient basis for reversal.

As above indicated, it was clearly brought out by Saltzman's testimony that speed of the truck was not reduced below 35 miles per hour until defendant's car was within 5 or 10 feet of the paved slab on 92. It was not claimed Saltzman could not

have reduced his speed during that interval. It is obvious he could have done so. The stricken answer thus merely brought out an obvious fact.

Further, Saltzman had testified in effect he could have brought the truck to a stop during the interval in question within 125 to 150 feet. He also said in substance and on cross-examination that when he did apply his brakes speed of the truck was effectively reduced. So the substance of the stricken answer appears by other testimony of this witness. See Pond v. Anderson, 241 Iowa 1038, 1045, 1046, 44 N.W.2d 372, 377; McKinney v. Clark Brown Grain Co., 232 Iowa 1235, 7 N.W.2d 798; Brown v. Sioux City & P. Ry. Co., 94 Iowa 309, 310, 62 N.W. 737.

IV. Instruction 14 told the jury if they found plaintiff (plaintiff's driver) was confronted with a sudden emergency by acts of defendant, then in considering whether he acted as a reasonably prudent man under the circumstances they were instructed that one who is confronted with a sudden emergency without sufficient time to determine with certainty the best course to pursue is not held to the same accuracy of judgment as would be required if he had time for deliberation.

Defendant objected to the instruction on the grounds: (1) It in effect says if an emergency arose by either negligent or rightful acts of defendant, plaintiff could claim it as an excuse for its failure to use ordinary care. (2) It fails to say if such emergency arose from negligence of plaintiff's driver plaintiff could not claim it as an excuse for his failure to use ordinary care. (3) It fails to say plaintiff's driver would be required to use the care of an ordinarily prudent person under the circumstances.

It is a sufficient answer to this third ground that other instructions include the statement that plaintiff's driver was required to use ordinary care to avoid the collision. The last sentence of instruction 13 so states and instruction 15 says it is the duty of all drivers to use ordinary care at all times. That instructions should be read and considered together is too well settled to require extended citation. See however Angell v. Hutchcroft, 231 Iowa 1057, 1060, 3 N.W.2d 147, 148; Burwell v. Siddens, 238 Iowa 645, 647, 25 N.W.2d 864, 865; McGrean v. Bos Freight Lines, 240 Iowa 318, 324, 36 N.W.2d 374, 378. Here

the court gave the jury the familiar instruction that its entire charge should be considered together. (Indeed this instruction was given a second time, apparently by inadvertence.)

As to the second ground of defendant's objection, it is true instruction 14 does not expressly say plaintiff could not claim any benefit from an emergency if it arose from negligence of its driver. However, at least by implication the instruction so states. The entire instruction is expressly conditioned on a finding that plaintiff (plaintiff's driver) was confronted with a sudden emergency by acts of defendant. The jury had no right to consider the rule set out in the instruction at all if an emergency arose from negligence of plaintiff's driver. This sufficiently embodies the thought stated in the second ground of the objection.

As to the first ground of the objection, we think instruction 14 does not say in effect, as defendant contends, that an emergency would excuse the failure of plaintiff's driver to use ordinary care. It implies what other instructions expressly state that it was his duty to use ordinary care. What is required of one in a sudden emergency is to be considered, according to the instruction, upon the question whether plaintiff's driver acted as a reasonably prudent man under the circumstances.

Much of instruction 14 was evidently taken from 65 C. J. S., Negligence, section 17a, page 408. The statement there made is quoted with approval in Koob v. Schmolt, 241 Iowa 1294, 1299, 45 N.W.2d 216, 218, and McKeever v. Batcheler, 219 Iowa 93, 95, 96, 257 N.W. 567. Similar language is found in 38 Am. Jur., Negligence, section 41. See also Band v. Reinke, 227 Iowa 458, 465, 288 N.W. 629.

Under the authorities just cited and others one confronted with a sudden emergency not of his own making is required to exercise such care as an ordinarily prudent man would exercise when confronted with a like emergency. While instruction 14 might well have stated the law of emergency somewhat more fully, we do not find it objectionable upon the grounds urged by defendant.

V. Defendant's final claim to a reversal is the overruling of ground 21 of his motion for new trial which asserts

misconduct of the jury during its deliberations in that two or more jurors had in their possession at least two copies of a printed book, "The Iowa Drivers' Guide", issued for 1946 by the state Department of Public Safety, containing numerous Code sections relating to the operation of motor vehicles; certain jurors examined and read aloud from the books to the other jurors and the portions so read were discussed; among the sections so read and discussed were those relating to overtaking and passing near intersections and to stopping for through highways and at stop signs.

In considering ground 21 of defendant's motion the trial court assumed, as we shall do, the truth of the above facts upon which the claim of misconduct is based. Two copies of The Iowa Drivers' Guide for 1946 have been certified to us. They were found in the jury room about two weeks after the verdict was returned and are probably the same books referred to in defendant's motion. Each is a paper-bound pamphlet about 4 by 8 inches in size containing about 70 printed pages exclusive of table of contents and similar matter. These pamphlets are familiar to most persons to whom an Iowa driver's license has been issued. They were published, according to introductory statements in them, to promote highway safety and help applicants secure a driver's license.

We are not persuaded the trial court abused its discretion in overruling ground 21 of defendant's motion for new trial. It had considerable discretion in the matter of granting a new trial upon such a ground. In re Estate of Murray, 238 Iowa 112, 114, 26 N.W.2d 58, 60; 39 Am. Jur., New Trial, section 73; 66 C. J. S., New Trial, section 201b (2), page 492.

█ Misconduct of the jury justifies granting a new trial if it was calculated to, and it is reasonably probable did, influence the verdict. See In re Estate of Murray, supra, 238 Iowa 112, 120, 26 N.W.2d 58, 63, and citations. See also 66 C. J. S., New Trial, section 47, page 162.

Keller v. Dodds, 224 Iowa 935, 277 N.W. 467, was an action against a trucker for damages from a collision. It was there shown beyond dispute a juror informed the other jurors during their deliberations it was compulsory under Iowa law for a trucker to carry liability insurance and the jurors then discussed

the subject of defendant's having such insurance. After careful consideration we held it was not shown there was prejudicial misconduct because it is common knowledge owners of motor vehicles are generally protected by liability insurance, the statute requires all truck operators to carry such insurance and every juror is presumed to know the law.

Later decisions cite Keller v. Dodds, supra, with approval. Hoffman v. Jones, 229 Iowa 333, 294 N.W. 588; State v. Billberg, 229 Iowa 1208, 1222, 296 N.W. 396, 404; Remer v. Takin Bros. Freight Lines, 230 Iowa 290, 296, 297 N.W. 297, 299. See also 66 C. J. S., New Trial, section 58b(3), page 180.

We think our decision in Keller v. Dodds, supra, is applicable here. The jurors are presumed to have known any provisions of law which were read from The Iowa Drivers' Guide and discussed by them. Such reading and discussion, although of course not to be commended, seems less likely to have influenced the verdict than what was said and discussed in Keller v. Dodds.

The situation here is somewhat like that where jurors consult a dictionary during their deliberations. This has been held not to require a new trial. 66 C. J. S., New Trial, section 58d(1), page 182; 39 Am. Jur., New Trial, section 84, page 98.

Our conclusion does not conflict with State v. Kirk, 168 Iowa 244, 256-262, 150 N.W. 91, cited by defendant. There the jury procured a Code and ascertained the penalties for the offenses included in the indictment for murder "for the evident purpose of taking the punishment into account in determining the issue as to defendant's guilt." (Page 260 of 168 Iowa.) The information thus obtained was incomplete and inaccurate in that since the Code was published the indeterminate sentence law was enacted which required the imposition of a sentence in all cases, except treason and murder, for an indeterminate term not exceeding the maximum. A verdict of manslaughter was returned with a recommendation to the court of mercy. We held it was likely the verdict was influenced by the erroneous conception the jury obtained from the Code of the punishment to be administered and ordered a new trial in part upon this ground.

In the Kirk case it is reasonably probable that without knowledge of the indeterminate sentence law the jurors were

led to believe erroneously by their examination of the Code the court could impose sentence for any fixed term not in excess of the maximum. The Kirk opinion intimates the decision upon this question might have. been different if the jury had been informed of the indeterminate sentence law. "Had their information been complete and accurate there might have been no prejudice * * *." (Page 260 of 168 Iowa.) In the case at bar there is no inaccurate information concerning the law in The Iowa Drivers' Guide.

State v. Kirk, supra, was considered in Keller v. Dodds, supra, 224 Iowa 935, 941, 277 N.W. 467.—Affirmed.

All JUSTICES concur.