**CHICAGO, ROCK ISLAND & PACIFIC R.
CO. v. FLEISCHMAN.**

No. 14670.

United States Court of Appeals
Eighth Circuit.

June 19, 1953.

B. A. Webster, Jr., Des Moines, Iowa (R. L. Read and A. B. Howland, Des Moines, Iowa, on the brief), for appellant.

Frank B. Comfort, Des Moines, Iowa (Frank J. Comfort and George P. Comfort, Des Moines, Iowa, on the brief), for appellee.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

On February 27, 1951, the appellee, a physician and surgeon of Des Moines, Iowa, was a passenger on one of appellant's passenger trains en route from Des Moines, Iowa, to Rock Island, Illinois, occupying a front seat in one of the coaches of the train. About an hour after the train had left Des Moines, a dining car attendant appeared in the coach in which the appellee was sitting carrying a metal basket or tray containing sandwiches and other refreshments, and a coffee pot containing from four to six quarts of coffee. When serving the purchasers of sandwiches or other refreshments and when making change, the waiter was compelled to place the coffee pot on the floor of the car. The appellee purchased a carton of cookies and observed at the time that the waiter placed the coffee pot in the aisle of the coach near his seat.

Appellee had been suffering from arthritic gout for many years, affecting his feet and ankles, and for that reason he occupied the front seat in the coach where two seats face each other and where, as he said, he could "stretch his legs." Shortly after he purchased the cookies, he left his seat to go to the luggage compartment in the rear of the coach in order to obtain from his baggage medicine which he took several times daily for the relief of the condition from which he was suffering. In the meantime the waiter, also proceeding toward the rear of the car, was serving a customer several seats to the rear of the one occupied by appellee. The waiter had placed his coffee pot in the aisle of the car three or four feet beyond the seat occupied by the customer he was then serving. The train was moving at a speed of from 79 to 82 miles an hour. The appellee did not see the coffee pot in the aisle of the car, stumbled over it, and fell against a car seat. He received first, second, and third degree burns on his left foot and ankle and a severe blow on his hip.

At the first stop after the accident appellee was treated by a local physician for the railroad company, who advised appellee on his arrival at Rock Island to consult the local physician of the railroad company there. This was done and appellee was again treated while in Rock Island. He returned to Des Moines on the following March 1 where he was again examined and treated by the local Rock Island physician.

Appellee testified that he was advised by the doctors to keep off of his feet, and that since he was not able to attend to his work as a physician and surgeon he went to Florida where he arrived on March 5 and remained until March 18. The reason given for the trip to Florida was that appellee suffered an exacerbation or a flare-up of his arthritic gout and that he had found from past experience that resting in a warm climate promoted a recovery from that condition. He brought this action against the Rock Island alleging that his injury was caused by the negligence of the railroad company, that the blow to his hip and the burns on his ankle and foot caused a flare-up of his gout, and that as a result he suffered great pain and mental anguish, incurred expenses for medical treatment, and sustained a loss of approximately $3,000 by reason of his inability to practice his profession during the months of March and April, 1951. He asked for judgment in the sum of $12,000.

In its answer the railroad company admitted that appellee was a passenger on its train at the time stated in the complaint

and that he had suffered from arthritic gout. All other material allegations of the complaint were denied, and the railroad company set up appellee's contributory negligence as the proximate cause of his injury and in mitigation of damages.

■■■ Jurisdiction of the Federal Court was based on the diversity of citizenship and the amount involved. The law of Iowa controls. The trial court ruled and the parties concede that under Iowa law a carrier of passengers for hire is bound to exercise the highest degree of care to protect a passenger from injury; that a carrier is liable for slight negligence resulting in injury to a passenger; and further, that a passenger's contributory negligence is not a complete defense to a passenger's action to recover for injuries caused by the carrier, but is to be considered only in mitigation of damages. Murray v. Cedar Rapids City Lines, 242 Iowa 794, 48 N.W.2d 256; Rule 97, Iowa Rules of Civil Procedure, 58 I.C.A. It is also the law of Iowa that questions of contributory negligence are ordinarily for the trier of the facts, and that only in cases in which the evidence is such that reasonable minds could reach only one conclusion does the question become one of law. Beach v. City of Des Moines, 238 Iowa 312, 26 N.W.2d 81; Fort Dodge Hotel Co. of Fort Dodge v. Bartelt, 8 Cir., 119 F.2d 253, 257.

That appellee tripped over the coffee pot, that he received severe burns on his ankle and foot, and a severe blow on his hip is not disputed in the evidence. That he incurred certain medical expenses in the treatment of injuries is also not disputed. Whether the injuries mentioned caused a flare-up of appellee's gout, and whether appellee's inability to practice his profession as physician and surgeon for the months of March and April, 1951, were the result of the injuries sustained or the result of his gouty condition, are questions on which the evidence is in conflict.

The parties consenting, the case was tried without a jury. The trial judge found that appellee's injury was caused by the negligence of the dining car attendant in placing the coffee pot in the aisle of the passenger coach, that appellee was not guilty of negligence in any degree contributing to his injury, that appellee was prevented by his injury from carrying on his professional activities for two months following the accident, and that there was no substantial evidence in the record to show that the injury received by the appellee caused an exacerbation of his arthritic gout from which he was suffering at the time of the accident.

For the purpose of this appeal the appellant concedes the negligence of its dining car attendant, but it urges that the evidence established as a matter of law the contributory negligence of appellee as the proximate cause of his injury, and that there is no substantial evidence to support the trial judge's finding that appellee suffered any loss of earnings as the result of the injury received in the accident.

■■ Applying the Iowa rule that one can not, in the absence of knowledge or notice, be guilty of negligence for failure to anticipate negligence in others, Merritt v. Interstate Transit Lines, 8 Cir., 171 F.2d 605, the trial judge found that appellee was not guilty of any degree of contributory negligence in failing to discover the coffee pot in the aisle of the coach, or in failing to anticipate under the facts in this case that the dining car attendant would leave in the aisle of the coach a large pot of coffee hot enough to inflict first, second and third degree burns when overturned. Appellant attacks this finding of the trial judge on the ground that under the evidence appellee was charged with notice that the waiter in serving customers placed the pot of coffee in the aisle of the coach, that appellee had observed this action on the part of the waiter when appellee was served, that when appellee started to the rear of the coach the waiter was in full view of appellee, serving another passenger, that by the exercise of ordinary care appellee could have observed the coffee pot in the aisle and avoided striking it. But we think the question was one on which reasonable men might reach different conclusions. The question was one of fact for the trial judge. We can not say that his finding was clearly erroneous. The dining car attendant testified that he

had left the coffee pot in the aisle of the car three or four feet beyond the seat of the passenger he was serving at the time of the accident. The train was moving at approximately 80 miles an hour. The danger to a passenger passing through the narrow aisle of the coach in such a situation is obvious. Compare Fort Dodge Hotel Co. v. Bartelt, supra, 119 F.2d 253, 256–257.

On the question of damages the District Judge had this to say in his memorandum opinion:

> "We have excluded therefrom any liability to plaintiff because of the claimed exacerbation of the arthritic gout. There yet remains the resulting pain in plaintiff's hip, the pain and suffering occasioned by the severe burning, his loss of earnings by reason of his disability and the medical and hospital expense necessarily incurred."

The judge found that the appellee was entitled to recover $86.94 for medical and hospital expenses, $1,000 for pain and suffering resulting from the burn and bruised hip, and $1,888 representing "what the court finds he (the appellee) would have earned if he had been able to carry on his professional activities and had not been prevented by the injury." Judgment was awarded the appellee for the total of these items, $2,974.94.

Appellant attacks the award for loss of earnings on the ground that there is no substantial evidence to support it. The argument is that since the court found that appellee's injury had no connection with the arthritic condition from which he suffered, and specifically refused to allow any recovery for disability resulting from that condition, neither the fact of appellee's loss of earnings, if any, nor the amount of such loss is established with the required degree of certainty.

Appellee is an expert in urology, and the greater part of his earnings is received from surgery in this field. He testified that at least 50 per cent of his surgical practice was referred to him by other doctors. His testimony was that during the two months following his accident he was unable to engage in surgery and his office records show that during this period he performed no surgery. As quoted in the narrative statement of his testimony, he said: "During March and April I would refuse to do certain work because I felt I was not capable of doing justice to a patient and I turned down quite a few cases, and I know that work was referred to me during my absence which was sent to other specialists in my field." Accepting this general statement as sufficient to establish the fact of loss of earnings, it falls far short of affording any basis upon which to compute the amount of lost earnings with any reasonable degree of certainty.[1] There remains unanswered the question whether the loss was caused by appellee's arthritic gout or by the injury which he received as the result of appellant's negligence. It is still necessary to resort to speculation for the purpose of determining what portion of appellant's loss of earnings was attributable to the flare-up of his arthritic gout or to the fault of the appellant.

From March 1 to March 4, inclusive, appellee was in his office attending to such patients as appeared. On March 5, because of the exaggerated condition of his gout, which he attributed to the injury but which the trial judge found was not caused by the injury, appellee left his office for Florida where he remained until March 18. It was during this absence from his office that surgical work was referred to him by other doctors. Appellee returned to his office on March 20 and the office records show that throughout the remainder of March and April he was in his office treating such patients as appeared. He continued during this time to be treated for his arthritic condition. He

---

[1] "The rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount." Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 562, 51 S. Ct. 248, 250, 75 L.Ed. 544.

offered no evidence to show when he recovered from the burn on his ankle or the bruise on his hip. Nor does he contend that either alone incapacitated him from the practice of surgery. While appellee's evidence does show that during the months of March and April he received no patients requiring surgery in the limited field in which he operated, it also showed that he received no surgical patients in the following month in which he suffered no disability, and that in the month before his injury his total receipts from surgery were only $160. This evidence affords no basis upon which any reasonable inference can be made as to appellee's loss of earnings from patients requiring surgery. Neither the trial judge nor the appellee attempted to make any estimate of appellee's loss of surgical income. The burden was upon appellee to offer some standard by which the amount of his loss could be computed. We find none in the record.

▆ Appellee established that his average monthly gross receipts for the years 1949 and 1950 and for the ten months of 1951 were $1,301.81, from which he assumed that but for his disability his earnings in March and April would have been $2,603.62. His office records show that his gross earnings, as distinguished from his gross receipts, for the months of March and April in cash and charge accounts were $836.50. Discounting his charge accounts by 25 per cent, appellee claimed gross earnings for the two months in question of only $715.62. Deducting this amount of earnings for the two months in question from $2,603.62, he arrived at the sum of $1,888 as his loss of earnings. The trial judge accepted this computation. The error lies in failing to distinguish between gross receipts and gross earnings. The evidence shows that the appellee's gross receipts for a given month were composed of receipts of earnings for services rendered in prior months plus receipts earned in the particular month. For example, in March 1951 appellee received for services rendered in that month $150 in cash, and for services rendered in prior months, $1,121.87. In April he received in cash earned in that month $203, and for

services rendered in prior months, $1,004.50. His gross receipts in March were $1,271.87 and in April, $1,207.50, a total for the two months of $2,479.37, only $124.25 less than twice his average monthly gross receipts before and after his injury. In the month of May, when he was under no disability, appellee received for services rendered $116, and for services rendered in prior months, $1,046.71. These examples show that the average monthly gross receipts bear no relation whatever to average monthly gross earnings. The fact that actual earnings in one month are less than average gross receipts for months before or after the months in question does not tend to show a loss of earnings. The record contains no evidence from which appellee's average monthly earnings, as distinguished from his average monthly receipts, can be determined. It does show, however, a wide disparity between appellee's gross receipts from month to month. In July 1949 appellee's receipts amounted to $2,284. In November of the same year only $542 was received. In July of 1950 appellee's gross receipts were $1,977, and in August of the same year, $599. Nothing in the record indicates that the appellee earned more from the practice of his profession in the months of July 1949 and 1950 than he earned in the months of November 1949 and August 1950. Under all the evidence the fact of appellee's loss as a result of his burn and bruise is at least questionable. The cause of the loss is doubtful. While appellee was not required to establish the amount of his loss of earnings with mathematical precision, he carried the burden of supplying some evidence from which the amount could be determined as a matter of reasonable inference. On this record the amount of appellee's loss is left to speculation and conjecture.

This is not a case in which the wrongful act of appellant prevented appellee from making more precise proof of the amount of his loss. Bigelow v. RKO Radio Pictures, 327 U.S. 251, 266, 66 S.Ct. 815, 90 L.Ed. 1040. Such evidence, on the other hand, was within the knowledge of appellee as appears from his own testimony.

The judgment for medical and hospital expenses and pain and suffering is affirmed. The judgment for loss of earnings is reversed.