**MERCHANTS MOTOR FREIGHT, Inc.,**
**Appellant,**

v.

**Glen DOWNING and Independent Truck-**
**ers, Inc., Appellees.**

**No. 15275.**

United States Court of Appeals
Eighth Circuit.

Nov. 22, 1955.

Charles M. Bump, Des Moines, Iowa (Paul W. Walters, Des Moines, Iowa, was with him on the brief), for appellant.

D. J. Fairgrave, Des Moines, Iowa (John V. Synhorst, Des Moines, Iowa, was with him on the brief), for appellees.

Before JOHNSEN, COLLET, and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal from final judgment based upon jury verdict denying claim of appellant, hereinafter called plaintiff, and establishing counterclaim of appellee Downing, hereinafter called defendant, the litigation arising out of a collision of a tractor trailer combination owned by plaintiff and driven by its employee, Mangert, and a tractor, owned and driven by defendant, pulling a trailer owned by appellee Independent Truckers, Inc., on U. S. Highway No. 6 near Tiffin, Iowa, on January 8, 1953, at 1:30 A.M. Jurisdiction based upon diversity of citizenship has been established.

Highway No. 6 at the place of collision is a paved two-lane highway with a black line marking its center. The paving is 18 feet wide, including a sloping curb 11 inches wide on each side of the highway, leaving 16 feet 2 inches of paving measured from the inside edge of the curbs, or a distance from the inside edge of each curb to the center line of 8 feet 1 inch. On each side of the pavement is a dirt shoulder approximately 10 feet wide. Each tractor and trailer combination was just under 8 feet wide and about 45 feet long and was carrying a load. Plaintiff's vehicle was proceeding west uphill. Defendant's vehicle was traveling east downhill. There was some mist and the road was beginning to get slippery.

Plaintiff claims the collision was proximately caused by defendant's failure to yield one-half the traveled highway, to keep a proper lookout, to have his vehicle under control, and to keep to the right when approaching a curve. Freedom from contributory negligence is asserted. Defendant in his counterclaim relies upon the same specifications of neg-

ligence and asserts freedom from contributory negligence. Neither party asserts the other was traveling at an excessive speed.

Plaintiff relies principally on the testimony of its driver, Mangert, to the effect that when the vehicles were about 500 feet apart said driver observed defendant's truck running on the black center line with the vehicle overhanging said line. Mangert states that he tried to turn to the right to get his vehicle over the curb but failed because it was too icy. When the defendant continued to encroach on plaintiff's side of the road and got very close—about two truck-lengths away—Mangert turned more sharply to the right and got the front wheels over the curb. The trailer jackknifed, swinging to the left, and in so doing crossed on to defendant's side of the highway. After the collision plaintiff's trailer was still somewhat over the center line. The collision occurred between the left front of defendant's cab and the left rear corner of plaintiff's trailer. In some respects Mangert's testimony is corroborated by the driver of a truck following him.

Defendant denied that his truck was to the left of the center line. His version of the accident was that he was following another Merchants truck, that after plaintiff's truck had passed said truck it "seemed to sway over to the shoulder of the road, back into the center of the road, and over onto my side, and then to cut way over to the left side, off to my left, which was the right side of the road for him, and up over the shoulder into a jack-knife position. The trailer kept coming toward me as I was going slowly down this hill. Now as this happened—I will tell you the truth —I thought he was going to turn around and get out of my way before I actually did come upon him, but because he went back a second time and didn't go into the ditch and jack-knifed like, I thought he was—the first attempt that his truck seemed to be out of control. He came closer toward me and when I saw that,

I tried to get out of his way. I pulled off to the right and I got my right wheel off into the grass shoulder of the highway, but my left wheel wouldn't climb up the beveled shoulder. As I did that I saw his trailer start to whip towards me and then just before it happened, I ducked down in the cab and laid down out of the way, and the glass and everything from the windshield went all over me."

The evidence will be further developed in discussing the errors asserted by the plaintiff, which we now proceed to consider.

I. Over plaintiff's objection the defendant was allowed to testify that he had received a $7,500 offer from an undisclosed source for his tractor shortly before the collision. The court in its instructions also mentioned the offer as a factor for the jury to consider in determining the reasonable market value of defendant's tractor before the collision. Plaintiff made proper exception to this instruction. The evidence discloses that defendant's vehicle could be restored to its pre-accident condition by repairs. Under such circumstances the applicable measure of damages is the reasonable cost of repairs plus the reasonable value of the use of the vehicle while being repaired with ordinary diligence, not exceeding the value of the vehicle before injury. Langham v. Chicago, R. I. & P. Ry. Co., 201 Iowa 897, 901, 208 N.W. 356, 358; Kohl v. Arp, 236 Iowa 31, 33, 17 N.W.2d 824, 826, 169 A. L.R. 1067. It was stipulated that if called proper witnesses would establish the cost of repairs and damage for loss of use of the tractor at $6,557.18. Plaintiff reserved the right to assert its contention that the cost of repairs and loss of use exceeded the value of the defendant's tractor before collision. The defendant as a witness fixed the reasonable market value of his tractor immediately prior to the collision at $9,000. Under Iowa law the owner of personal property is qualified and competent to testify as to its value. Kohl v. Arp, supra; Slabaugh

v. Eldon Miller, Inc., 244 Iowa 29, 55 N. W.2d 528. Counsel has not cited any Iowa authority, nor have we found any, directly on the issue whether the owner of property is permitted to testify as to offers he has received. Generally it appears that such evidence is not admissible. Sharp v. United States, 191 U.S. 341, 348, 24 S.Ct. 114, 48 L.Ed. 211; 31 C.J.S., Evidence, § 183, p. 898; 20 Am. Jur., Evidence, § 375, p. 341. The jury awarded the defendant $3,200, slightly less than one-half of the damage stipulated, subject to proof of the value of the tractor before the accident. Since there was competent evidence that the pre-accident value of the tractor was $9,-000, we can not see where any possible prejudice resulted from admitting proof of the $7,500 offer and the reference thereto in the instructions.

II. Defendant's deposition had been taken before trial. He was examined as a witness at the trial. Some inconsistencies appeared between his testimony at the trial and that disclosed by the deposition. Plaintiff's counsel interrogated defendant as to such inconsistencies, and secured his admission at least in most instances as to the testimony that he had given by his deposition. The plaintiff then sought to introduce the deposition as a whole, and later, certain portions thereof. The court sustained the defendant's objection to such offer, stating:

"I will not permit a discovery deposition to be offered and received in evidence when we have the witness on the stand. If you have any particular portion that you want to offer you may interrogate the witness about it, but you have the witness here and you may elicit from the witness anything that you have tried to obtain in the deposition, but I will not admit the deposition nor questions and answers from it other than for impeachment purposes."

Rule 26(d) (2) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides:

"The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent of a public or private corporation, partnership, or association which is a party may be used by an adverse party for any purpose."

This rule is broad and has been liberally interpreted. Pfotzer v. Aqua Systems, 2 Cir., 162 F.2d 779; Buder v. New York Trust Co., 2 Cir., 107 F.2d 705; 4 Moore's Federal Practice, p. 1187.

Under the rule hereinabove quoted the plaintiff was entitled to introduce the defendant's deposition into evidence, subject to the court's right to exclude such parts thereof as might be unnecessarily repetitious in relation to the witness' testimony on the stand. There is considerable doubt whether the failure to receive this evidence resulted in any prejudicial error in this case, since the substantial discrepancies were admitted by the defendant when he appeared as a witness. However, since this case must be reversed for other reasons we need not decide whether this error alone would warrant a reversal.

III. Plaintiff contends the court erred in failing to sustain its motion for a directed verdict upon defendant's counterclaim on the basis that defendant was guilty of contributory negligence as a matter of law. The plaintiff relies upon Nurnburg v. Joyce, 232 Iowa 1244, 7 N. W.2d 786; and Dircks v. Tonne, 183 Iowa 403, 167 N.W. 103, which assert the rule that where a person drives into a place of known or obvious danger, when he has means at hand to avoid a collision, he is guilty of negligence as a matter of law. We are convinced that the rule does not apply to the facts in this case. The factual situations in the cited cases are clearly distinguishable from the situation now confronting us.

A party against whom a motion for directed verdict is made is entitled to have the evidence viewed in the light most favorable to him. Hahn v.

Strubel, 243 Iowa 438, 52 N.W.2d 28; Brinegar v. Green, 8 Cir., 117 F.2d 316. Mangert's own testimony is that he did not start the turn which caused the jackknife until the vehicles were within two truck-lengths of each other. Obviously, the distance between the vehicles would be less when the danger definitely developed. Plaintiff relies heavily upon defendant's statement in his deposition that his speed was 20 miles an hour, and that at that speed he could have stopped his truck in 50 feet. At the trial defendant testified that he could not stop his truck in 50 feet and didn't know what distance would be required to bring it to a stop. Defendant's testimony also is that he started to pull to his right before the collision. It is obvious that a loaded truck traveling downhill at 20 miles an hour on an icy road could not stop in a distance of 50 feet. Defendant is not conclusively bound as a matter of law by the estimate as to the required stopping distance that he made in his deposition. The decision on the contributory negligence issue must be based upon the consideration of all of the evidence.

 The issue of freedom from contributory negligence ordinarily presents a question of fact for the determination of the jury. If there is any evidence tending to establish freedom from contributory negligence the issue is for the jury. Weilbrenner v. Owens, Iowa, 68 N.W.2d 293; Chicago, R. I. & P. Ry. Co. v. Fleischman, 8 Cir., 204 F.2d 799. The evidence before us in this case is in conflict upon the issue of defendant's freedom from contributory negligence. The court properly overruled the plaintiff's motion for a directed verdict upon defendant's counterclaim.

 IV. Plaintiff vigorously contends that the court erred in failing to instruct on legal excuse and emergency. Plaintiff's requested instructions which were refused included the legal excuse issue. The court covered legal excuse in its preliminary draft of instructions. In considering exceptions to the proposed instructions the court stated:

"I am going to rewrite number 10½ and exclude therefrom the language 'in the absence of a legal or justifiable excuse therefor.' And the definition of it I am going to exclude, because a re-examination of the pleadings discloses that you did not plead legal excuse. And the Supreme Court of Iowa has held that giving such an instruction in such case is error. I don't have the citation before me. Now there is no pleading here as to legal excuse and there is no evidence to support it and there is no pleading of it. It is not an issue in the case in other words. * * *"

It is clear from the Iowa decisions that legal excuse need not be pleaded by a party to avail himself of the rule. Koob v. Schmolt, 241 Iowa 1294, 45 N.W.2d 216; Townsend v. Armstrong, 220 Iowa 396, 260 N.W. 17; Sanford v. Nesbit, 234 Iowa 14, 11 N.W.2d 695.

In the Koob case, supra, 45 N.W.2d at page 218, the court states:

"Plaintiff argues 'the defendant did not (claim) and has not claimed that an emergency existed * *.' It is not clear on what this argument is based. *Defendant did not need to plead emergency.* * * *

"Notwithstanding an intimation in one of our cases that the doctrine of emergency is available only to establish freedom from contributory negligence, Cubbage v. Conrad Youngerman's Estate, 155 Iowa 39, 50, 134 N.W. 1074, it clearly is to be considered in any case in which is involved the conduct of a person who is put in peril not of his own creation. * * *" (Emphasis supplied.)

Since the law does not require a party to plead legal excuse or emergency to be entitled to the benefit of the rule, we need not determine whether plaintiff has

established its contention that legal excuse was pleaded.

 If there is evidence to support legal excuse it is the duty of the court to submit such issue to the jury under proper instructions particularly when request for such instruction has been made. Kisling v. Thierman, 214 Iowa 911, 243 N.W. 552; Babendure v. Baker, 218 Iowa 31, 253 N.W. 834; Edwards v. Perley, 223 Iowa 1119, 274 N.W. 910; Christenson v. Northwestern Bell Telephone Co., 222 Iowa 808, 270 N.W. 394; Sanford v. Nesbit, supra.

In the Babendure case, supra, the vehicles were approaching each other from opposite directions. Plaintiff turned to the left, contending he was confronted with an emergency created by the approaching car swerving from side to side across the pavement. A directed verdict for the defendant was reversed, the court finding that there was sufficient evidence to develop a fact issue for the jury on legal excuse. In the Christenson case, supra, a jury verdict for defendant was reversed, the court finding that the failure to submit the legal excuse issue when there was evidence to support the same was error. At pages 396–397 of 270 N. W. the court says:

"The complaint to this instruction is that under it the jury would be led to believe that if the driver of the car in which decedent was riding was on the wrong side of the road the decedent's estate could not recover, and in view of the fact that the evidence does show that the car was on the wrong side of the road at the time of the collision, the instruction amounted to a mandatory direction to the jury to return a verdict for the defendant, and that the instruction entirely omits reference to a sudden emergency or excuse for the decedent's car being on the wrong side of the road.

"The instruction complained of may be correct as an abstract proposition of law, but it cannot be said that stating such abstract proposition correctly without explaining its application would not result in misleading or confusing the jury in the face of the record in this case which, without question, shows that the decedent's automobile was on the wrong side of the road at the instant of collision. * * *"

In the case we are now considering, as in the Christenson case, the evidence shows plaintiff's vehicle was on the wrong side of the road at the time of the collision. Kisling v. Thierman, supra, clears up many uncertainties in the law pertaining to negligence cases, reaching the conclusion that the violation of a statute prescribing a standard of care constitutes negligence per se unless legal excuse is shown for the violation. Excepted from such rule are violations of the statutes requiring vehicles meeting each other to yield one-half of the traveled way by turning to the right. The court admits this exception is inconsistent with the general rule announced, but because of the many cases interpreting such statutes as giving a person the right to use any part of the highway outside of cities and towns except when meeting another vehicle, it is determined that proof that a vehicle is on the wrong side of the road is only prima facie evidence of negligence. With reference to legal excuse the court states 243 N.W. at page 554:

"With this thought in mind and in accord with this idea, a court is warranted in saying to the jury that if the defendant failed to observe the standard of care thus fixed by statute, he is guilty of negligence, unless he has shown a legal excuse for failure to observe the requirements of the statute or ordinance, and in case he has so shown such legal excuse, he is not guilty of negligence. By the term 'legal excuse' is meant:

"1. Anything that would make it impossible to comply with the statute or ordinance.

"2. Anything over which the driver has no control which places

his car in a position contrary to the provisions of the statute or ordinance.

"3. Where the driver of the car is confronted by an emergency not of his own making, and by reason thereof he fails to obey the statute.

"4. Where a statute specifically provides an excuse or exception."

The determinative issue at this point is whether the record contains evidence which would support a jury finding of legal excuse or emergency. We are convinced that it does. Much of the pertinent evidence has previously been set out. As heretofore stated the paved surface between curbs was 16 feet 2 inches wide. Each vehicle was nearly 8 feet wide. This left very little room for clearance. However, it would have been possible for the vehicles to safely pass if each observed its statutory duty and yielded one-half of the paved way. The passing margin of safety could be increased by the vehicles riding the sloping curbs. By Iowa statute, § 321.298, Iowa Code Annotated, each driver of the meeting vehicles was required to yield one-half of the paved surface. The plaintiff's driver had a right to assume that the defendant would obey the law and yield one-half of the traveled way until he knew or in the exercise of reasonable care should have known otherwise. Jordan v. Schantz, 220 Iowa 1251, 264 N.W. 259; Thordson v. McKeighan, 235 Iowa 409, 16 N.W.2d 607. Mangert, after relating that the defendant was continuing to encroach on his side of the road by crowding over the center line, testified as follows:

"Q. Mr. Mangert, did the position of the Downing truck, in your judgment, require some immediate action on your part? A. Yes, sir, it did.

"Q. And what action did it require in your judgment, right then? A. I tried to get off on the shoulder, to get out of his way.

"Q. All right. Did you fear something would happen if you did not get off of the highway? A. I feared a head-on or a side-swipe.

"Q. In view of the approach of the Downing vehicle coming down this hill, was it your judgment immediately prior, in attempting to turn off the shoulder, that that was the time to apply brakes on that vehicle to bring it to a stop? A. No.

"Q. That was not your judgment? Your judgment was to do what? A. To get off the road on the shoulder."

We believe that the jury would be warranted in finding from the plaintiff's testimony that the defendant created an emergency by encroaching upon plaintiff's side of the road, that the plaintiff's driver exercised ordinary care under such circumstances in trying to climb the curb, and that his effort to thus avoid a collision caused the jackknifing which placed plaintiff's truck on defendant's side of the highway. The testimony of both drivers is that the curb was hard to climb because of its icy condition.

The defendant contends that since the jury found for the defendant they did not believe Mangert. This reasoning is not sound. The jury were not instructed on legal excuse and care required in an emergency. They may have found for the defendant under the instructions merely because the evidence showed without controversy that plaintiff's vehicle was on the wrong side of the road after the jackknifing and just prior to the collision. This same argument was rejected in the Christenson case, supra. At 65 C.J.S., Negligence, § 252a, p. 1134, it is stated:

"*Emergency.* The questions whether an emergency existed, and whether a person who was confronted with a sudden emergency exercised such care as an ordinarily prudent man would have exercised, when confronted with a like emergency, ordinarily are questions of fact for the jury. The question whether one was without fault in

bringing about an emergency generally is for the jury."

The Iowa rule appears to be in accord with the above statement. Koob v. Schmolt, supra (dissenting opinion); Luppes v. Harrison, 239 Iowa 880, 32 N. W.2d 809; Leinen v. Boettger, 241 Iowa 910, 44 N.W.2d 73; Smith v. Darling & Co., 244 Iowa 133, 56 N.W.2d 47.

The question of the care to be used by a person faced with a sudden emergency is discussed in Fagen Elevator v. Pfiester, 244 Iowa 633, 56 N.W.2d 577, 581. The court, after reviewing the Iowa cases, and citing 65 C.J.S., Negligence, § 17a, p. 408, and 39 Am.Jur., Negligence, § 41, states:

"Under the authorities just cited and others one confronted with a sudden emergency not of his own making is required to exercise such care as an ordinarily prudent man would exercise when confronted with a like emergency. * * *"

■ This court has held that a party is entitled to a specific instruction on his theory of the case if there is evidence to support it, and if a proper request for the instruction has been made. Chicago & N. W. Ry. Co. v. Green, 8 Cir., 164 F.2d 55, 61; Chicago, R. I. & P. R. Co. v. Lint, 8 Cir., 217 F.2d 279, 285. The court committed prejudicial error in failing to submit the legal excuse issue to the jury.

V. Finally, the plaintiff asserts the court erred in failing to give its requested instruction relative to the statutory duty to drive on the right hand side of the road when approaching a grade or a curve under certain conditions. It is doubtful whether there is any evidence to support this specification of negligence. In any event the instruction given by the court on this subject is entirely adequate.

For the reasons set out in division IV of this opinion the judgment is reversed, and the case is remanded to the District Court for a new trial.