248 F.2d 704
 Gerard A. FLOERSCH, Jr., Executor of the Estate of Gerard A. Floersch, Deceased, and Florence Alberta Floersch, Deceased, Appellant,
v.
MERCHANTS MOTOR FREIGHT, Inc., a Minnesota Corporation, George Meads and Barbara Kaisser, Appellees.
 No. 15734.
 United States Court of Appeals Eighth Circuit.
 October 15, 1957.
 Rehearing Denied December 6, 1957.
 
 James G. McDowell, Jr., Des Moines, Iowa, for appellant.
 Donald T. Hines, Cedar Rapids, Iowa (Amor H. Sargent, Cedar Rapids, Iowa, on the brief), for appellees.
 Before SANBORN, WOODROUGH, and VAN OOSTERHOUT, Circuit Judges.
 VAN OOSTERHOUT, Circuit Judge.
 
 
 1
 Gerard A. Floersch and Florence Alberta Floersch, husband and wife, while in an automobile owned and operated by Mr. Floersch, suffered injuries causing their deaths as the result of a collision with a truck driven by defendant Meads.[1] Plaintiff, as executor of the estates of Mr. and Mrs. Floersch, brought this action for the wrongful death of each decedent, basing his right to recover upon both the specifications of negligence and the last clear chance doctrine. The case was tried to a jury. The court sustained defendants' motion to direct a verdict for the defendants upon all claims based upon Mr. Floersch's death. The claim for damages based upon Mrs. Floersch's death was submitted to the jury upon the specifications of negligence, but not upon the last clear chance doctrine. The jury found for the defendants upon the cause of action on behalf of the decedent Mrs. Floersch, based on specifications of negligence.
 
 
 2
 This appeal is from final judgment entered against the plaintiff dismissing all claims asserted. Jurisdiction based upon diversity of citizenship and the jurisdictional amount is established.
 
 
 3
 The principal error urged upon this appeal is that the court erred in sustaining defendants' motion for a directed verdict upon that portion of the plaintiff's claim as to each decedent which was based upon the last clear chance doctrine, and in failing to submit the claim as to each decedent to the jury upon the last clear chance doctrine. No complaint is made that the court erred in directing the verdict in favor of the defendants upon the divisions of the complaint asserting a right to recover on behalf of Mr. Floersch's estate upon the specific allegations of negligence. The sufficiency of the evidence to sustain the jury verdict for the defendants upon that portion of the claim on behalf of Mrs. Floersch's estate based upon specific allegations of negligence is not challenged.
 
 
 4
 We proceed to examine plaintiff's contention that the court erred in failing to submit the claims on behalf of each decedent, based upon the last clear chance doctrine.
 
 
 5
 The accident occurred in Iowa. All parties agree that Iowa law governs, and that the applicable Iowa law upon the last clear chance doctrine is set out in Menke v. Peterschmidt, 246 Iowa 722, 69 N.W.2d 65, at page 68, wherein the court states:
 
 
 6
 "III. It is well settled that the requisites to an application of the last clear chance doctrine are evidence that the defendant had 1, knowledge of plaintiff's presence; 2, realization of plaintiff's peril; and 3, the ability to avoid the injury to plaintiff thereafter. * * *"
 
 
 7
 We shall separately consider the three requisites of a cause of action based upon last clear chance.
 
 
 8
 Requisite No. 1 is a subjective test. Proof of actual knowledge by defendant of the plaintiff's presence is required. This test is fully met by the evidence in this case. Defendant Meads had actual knowledge of the presence of the Floersch vehicle prior to the collision. Requisite No. 2, realization of plaintiff's peril, is an objective test. Actual knowledge of plaintiff's peril is not required. The test is met if the peril should have been realized by a person of ordinary prudence in the exercise of reasonable care. There is evidence to support a conclusion that some time before the collision defendant Meads realized the peril. The third requisite is defendant's ability to avoid injury after realization of plaintiff's peril. In a last clear chance situation defendant may not be charged with negligence occurring prior to the time he discovered or should have discovered the peril. In the Menke case, supra, 69 N.W. 2d at page 69, the court states, "It is defendant's negligence after he discovers or in the exercise of reasonable care should have discovered the plaintiff's danger that brings the doctrine into effect." The defendant must have "time to be negligent." Mast v. Illinois Central R. Co., D.C.N.D.Iowa, 79 F.Supp. 149, 161, affirmed 8 Cir., 176 F.2d 157; Menke v. Peterschmidt, supra, 69 N.W.2d at page 72.
 
 
 9
 The Iowa court has not definitely determined whether the Iowa last clear chance doctrine is an exception to the rule barring recovery to one guilty of contributory negligence, or whether it is a phase of the doctrine of proximate cause. Menke v. Peterschmidt, supra; Mast v. Illinois Central R. Co., supra. In the last cited case, Judge Graven, after reviewing the applicable Iowa cases exhaustively, states (79 F.Supp. at pages 161-162):
 
 
 10
 "* * * However, whatever may be the situation as to the theory of the rule, it seems that the Iowa Supreme Court apparently still recognizes the right of injured persons whose negligence continues up to the instant of the collision to have the benefit of the rule. * * *"
 
 
 11
 The burden is on the pleader to prove the facts making the last clear chance doctrine applicable by a preponderance of the evidence. Menke v. Peterschmidt, supra, 69 N.W.2d at page 68; Mast v. Illinois Central R. Co., supra, 79 F.Supp. at page 160; Note 159 A.L.R. 724.
 
 
 12
 In the light of the principles of law just set out, we look to the evidence to determine whether the plaintiff has made a submissible case under the last clear chance doctrine. In examining the evidence we must, of course, examine it in the light most favorable to the plaintiff.
 
 
 13
 The collision between the truck and the Floersch automobile, which caused the injuries resulting in the death of Mr. and Mrs. Floersch, occurred about 10:35 P.M. on October 21, 1954, at a point on primary highway 30 about 27 feet east of the intersection of highway 30 and highway 212. Highway 30 runs east and west. Highway 212, from the place where it meets highway 30, runs in a southeasterly direction. There is a stop sign at this intersection stopping traffic entering highway 30 from highway 212. There is no road running to the north at the intersection of highways 30 and 212. Defendant Meads, as he approached the accident intersection, driving in a westerly direction on highway 30, was operating a tractor-trailer weighing 23,000 pounds, carrying a load of 30,000 pounds, a legally permissible load. At the same time the Floersches were traveling northwest on highway 212 in their automobile. Defendant Meads, driver of the truck, is the sole surviving witness to the accident. His testimony is that he first saw the Floersch car when he was 400 to 450 feet east of the intersection. He was then traveling 40 to 45 miles an hour and had just put on his brakes to slow down for the intersection. At that time the Floersch car was just behind the stop sign on highway 212. Meads thought the car was going to stop, but instead it pulled directly north across the highway when Meads was about 125 feet way. The Floersch car continued north up to a point where its front wheels were about one foot north of the north edge of highway 30, the rear end of the Floersch car then extending across the north half of the pavement and to a point about three feet south of the center line of the highway. Meads, who had been traveling on the right or the north side of the road, immediately applied his brakes, blew his horn, and turned to the left as far as he could to attempt to avoid the collision. Before the collision his left wheels were on the south shoulder of the highway. When the truck reached a point about 50 feet from the Floersch automobile, the automobile commenced to back up across the highway in a southerly direction, and there was nothing Meads could do to avoid the collision. Meads further testified that if the Floersch car had not been backed up, he would have safely passed to the south of the automobile.
 
 
 14
 Meads' testimony gains some corroboration from the physical facts. Two officers who came to the scene of the accident soon after it occurred testified to tire marks on the north shoulder of the pavement directly in line with the point of collision. They also testified as to skid marks made by the truck tires extending 125 feet back to the point of collision and heading in a southwesterly direction.
 
 
 15
 Plaintiff contends that the jury would not be compelled to believe Meads' testimony. He states that Meads' testimony at the trial as to his location when he first saw the Floersch car is inconsistent with the written statement he gave the coroner shortly after the accident and with the statement he gave the witness Shuttleworth the day after the accident. Meads' statement to the coroner was offered in evidence by the plaintiff and received for all purposes without objection. Plaintiff relies particularly upon the following part of the statement:
 
 
 16
 "* * * As I came over a hill going west at a point in Salt Creek Township, Tama County, Iowa, at what is known as intersection of Highway 30 and County Road No. 212, I noticed an automobile coming from No. 212 onto Highway 30. Said automobile was headed north, but [on] my portion of the Highway 30, I was travelling about 45 miles per hour at this time. As I approached said intersection from the east I operated my brakes which are air brakes controlled and in good condition. However, as it appeared the driver of the automobile was not going to clear my portion of the said Highway 30, I attempted to pass him on the left in order to avoid the collision. Just before contact was made, however, he reversed his movement and backed his car to the south but I was too close to his car to change my course of travel and we collided with the above results. * * *"
 
 
 17
 There is a hill east of the intersection. Plaintiff introduced undisputed evidence that a person coming down this hill as defendant Meads was could see the accident intersection when at a point 1500 feet distant therefrom. Plaintiff seizes on the words "As I came over the hill" in the statement given by defendant Meads to the coroner as meaning that Meads saw the Floersch car when he came over the top of the hill, and interprets Meads' statement to the coroner as stating that Meads saw the Floersch car when it was 1500 feet distant. Plaintiff argues that such a statement is inconsistent with Meads' testimony at the trial that he first saw the Floersch car when it was 450 feet away and his statement made to Shuttleworth the day following the accident that he saw the car when it was about 600 feet away.
 
 
 18
 Determination of the credibility of a witness falls within the province of the jury. It is true that a jury is not required to believe any witness. However, even if we assume that there is evidence from which the jury could find that Meads first saw the Floersch vehicle when it was 1500 feet distant, plaintiff still fails to make out a case of last clear chance.
 
 
 19
 It is definitely established that shortly prior to the collision the Floersch car had come to rest across the pavement, headed north, with its front wheels extending one foot north of the north edge of the pavement, blocking the north lane of the pavement and the north three feet of the south lane. In the argument on the motion for a directed verdict in the District Court the following colloquy took place:
 
 
 20
 "The Court: It seems to me that the evidence pretty conclusively establishes that their car was crosswise of the road over the north half.
 
 
 21
 "Mr. McDowell: I believe that is correct, your Honor.
 
 
 22
 "The Court: It would be pretty hard to get away from that."
 
 
 23
 Defendant Meads' testimony both at the trial and in his statement to the coroner is that he slowed down and turned to the left to pass. Meads testified at the trial that if Floersch had not attempted to back up he would have safely passed to the left of the automobile. This testimony is supported by the physical facts, the tire marks of the truck and the evidence showing adequate space on the south side of the pavement and adjoining shoulder to permit Meads to avoid the obstructing car. Consequently, it affirmatively appears that Meads was exercising reasonable care to avoid any collision after discovering the peril created by the position of the Floersch car on the highway. The only evidence of what happened thereafter is that offered by Meads. Such testimony is to the effect that the Floersch car started backing up to the south when Meads got within 50 feet of it. Meads' testimony as to his speed is that he was traveling 40 to 45 miles per hour 450 feet from the intersection, 30 to 35 miles per hour 125 feet from the intersection, and 10 to 20 miles per hour at the point of collision. Meads testified that when the Floersch car backed up when he was 50 feet away, it was impossible for him to avoid the collision.
 
 
 24
 The only evidence in the record bearing upon the issue of discovery of peril occasioned by the Floersch car being backed across the road is that of Meads. If his testimony is to be believed, he did not discover the peril created by this car movement within sufficient time to avoid the collision by the exercise of ordinary care. He did not have time to be negligent. Menke v. Peterschmidt, supra; Note, The Iowa Doctrine of Last Clear Chance by Harry G. Slife, 34 Iowa Law Review 480.[2] Again, plaintiff correctly states that a jury would not have to believe defendant Meads' testimony. In answer to this the trial court states:
 
 
 25
 "Can you prove the affirmative of a hypothesis by assuming a falsity of what has been testified to? And that is what you have to do. A witness comes on and testifies so and so. By saying because he must have been lying a case is for the jury even though there is no evidence to sustain that charge."
 
 
 26
 A somewhat similar problem confronted the court in the Menke case, supra. The court there states (69 N.W.2d at pages 70-71, 73):
 
 
 27
 "* * * The appellee devotes much time to his argument that Mrs. Menke's testimony is inconsistent and in many respects not credible. Without endorsing this contention, we think it immaterial in any event. Since she was the only witness who was present and who testified to what actually happened, if her testimony is not to be accepted, there is nothing substantial to show what she saw and what she did, or from which a last clear chance situation may be inferred. There are no presumptions of appellants' negligence to aid appellee. He must recover upon the strength of his own case; a merely negative showing will not avail him.
 
 
 28
 * * * * * *
 
 
 29
 "Something better than an opportunity for the jury to guess must be furnished by the litigant who assumes the burden of proving the applicability of the doctrine of the last clear chance. If the record here shows anything affirmative, it is that Mrs. Menke had no real time or opportunity — no `clear chance' — to avoid the collision within the meaning of the rule."
 
 
 30
 See also Mast v. Illinois Central R. Co., supra, 79 F.Supp. at page 164.
 
 
 31
 In our present case, if Meads' testimony as to the distance between the vehicles when the Floersch car started to back to the south is not to be believed, there is no evidence direct or substantial to indicate when in the sequence of events this backing up occurred, and there is no evidence to sustain plaintiff's burden of proving that such backing occurred a sufficient time before the collision to afford defendant Meads an opportunity to avoid the collision by the exercise of reasonable care. We are satisfied that the court was justified in sustaining the motion for a directed verdict as to the divisions of the complaint on behalf of each of the decedents, based upon the last clear chance doctrine.
 
 
 32
 Plaintiff also contends the court committed error in instructing the jury upon the doctrine of sudden emergency. From the exception taken to the instruction and from the statements appearing in plaintiff's brief, plaintiff's objection to the instruction appears to be based on the giving of any instruction at all upon sudden emergency, rather than to the form of the instruction given. Enough of the evidence has heretofore been set out to indicate that there is substantial evidence to support a finding that defendant Meads was confronted with an emergency not of his own making. Under such circumstances, under Iowa law, an instruction upon sudden emergency is required. Merchants Motor Freight v. Downing, 8 Cir., 227 F.2d 247, 252. The court committed no error in giving the sudden emergency instruction.
 
 
 33
 The judgment appealed from is affirmed.
 
 
 
 Notes:
 
 
 [1]
 Other defendants are the owner and lessee of the trailer tractor equipment. Their liability is dependent upon the liability of the driver, Meads
 
 
 [2]
 At p. 489 of the Law Review article, the author states: "The Iowa court has been very careful to require, particularly in the more recent cases, sufficient showing that avoidance would have been possible in the exercise of ordinary care. There are many cases approving the trial court's directed verdict for defendant where the record clearly shows that after discovery of plaintiff's position and facts justifying realization of his peril, there was not sufficient time to avoid the accident, and there are many more cases reversing a judgment for plaintiff because under the record the trial court should have directed a verdict for defendant for the same reason."